Eileen MILLER

v.

Clark MILLER.

Supreme Judicial Court of Maine.

Argued Sept. 19, 1995.
Decided May 28, 1996.

Robert E. Sandy, Jr. (orally), Sherman, Sandy & Lee, Waterville, for Appellant.

Dana E. Prescott (orally), Potter, Prescott, Jamieson & Nelson, P.A., Saco, for Guardian Ad Litem.

Margaret H. Semple (orally), South Portland, for Appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

This case is before us on report, pursuant to M.R.Civ.P.72(c), of an interlocutory order entered in the Superior Court (Penobscot County, *Mead, J.*), granting the motion of three minor children to intervene as parties in the divorce action between their parents and be represented by legal counsel independently of the guardian ad litem appointed previously to represent their interests. We vacate the order of the Superior Court.

Eileen and Clark Miller were married on October 25, 1975. In December 1992, Eileen filed a complaint for a divorce. Shortly thereafter, Clark filed an answer and a counterclaim for a divorce. Both parties filed motions pending the divorce, with each seeking the primary residence of their three children: Carissa Noel Miller, age 14; Nicholas Russell Miller, age 11; and Dylan Patrick Miller, age 9. Following a contested hearing in June 1993, the court (*MacInnes, A.R.J.*) issued its order pending divorce and awarded the primary residence of all three children to Eileen.

Prior to its order pending the divorce, and by an agreement of the parties, the court appointed a guardian ad litem for the three children.[1] Pursuant to the terms of the order appointing the guardian, Charles L. Robinson, a psychologist, prepared a psychological evaluation of the parties and the children. In preparing his evaluation, Robinson had a joint ninety minute meeting with Clark and Eileen; one-time individual meetings with Clark and Eileen; one visit each at the homes of Clark and Eileen when the children were present; and finally, two meetings with each of the children individually, in the presence of the guardian. All three children rejected the opportunity to speak with Robinson or the guardian alone. In January 1994, Robinson submitted a report recommending that all three children's primary residence be with Clark. Robinson noted in his report Eileen's stated intention to move

1. The terms of the court's order provided, in relevant part:

ORDERED that the guardian *ad litem* shall act in pursuit of the best interest of the children and shall investigate the circumstances concerning the childrens' welfare as it relates to the disposition of parental rights and responsibilities under 19 M.R.S.A. § 752. The guardian *ad litem* shall have the authority to undertake any or all of the following action [sic] which the guardian, in her discretion, deems appropriate including:

1. Review of relevant mental health records and materials of the parents and children;
2. Review of relevant medical records of the parents and children;
3. Review of relevant school records and other pertinent materials of the parents and children;
4. Interviews with the children with or without other persons present;

5. Interviews with parents, grandparents, teachers, daycare providers, psychologists and other persons who have been involved in caring for or treating the children or parents, or who may have knowledge of the children or family;
6. Request and arrange for psychological evaluations and/or counseling for the parents and/or children;
7. Appearance at any and all future proceedings, including pretrial conferences and trial;
8. Submission to the Court of a report in writing summarizing her position on behalf of the children with regard to the issues before the Court, provided that the guardian *ad litem* furnish copies to all parties reasonably in advance of hearing; and
9. Any other further and necessary authority as may be required to carry out her responsibilities.

to Connecticut. He also noted that Nicholas had expressed a preference to live with his mother.

Less than one month after Robinson submitted his report, the guardian submitted her report, which also recommended that all three children maintain their primary residence with Clark. The guardian's investigation consisted of one interview separately with Clark and Eileen, and two interviews with each of the children in the presence of either Dr. Robinson or Clark. The guardian also accompanied Robinson on each of the home visits mentioned above. The guardian noted in her report Eileen's stated intention to move to Connecticut, and Nicholas's expressed desire to move to Connecticut with his mother. According to the guardian's report, Dylan did not express a discernible preference about where he wished to reside.

Subsequent to the recommendations of Robinson and the guardian, Clark filed a motion to alter and amend the order pending the divorce to provide that the children's primary residence be with him. The motion was based primarily on his belief that Eileen was considering moving from Maine to Connecticut. At the hearing on Clark's motion, Eileen admitted that she was planning to move to Connecticut, and Carissa expressed a clear preference to live with Eileen.

In May 1994, attorney Margaret Semple received a phone call from Nicholas Miller seeking legal representation for himself and his siblings in his parents' pending divorce. Semple agreed to represent all three children on a pro bono basis. In July 1994, the Miller children filed a motion to intervene in their own names and to be represented by legal counsel. Clark opposed the children's motion, as did the guardian.

In August 1994, the court (*Marsano, J.*) granted Clark's motion to amend the order pending divorce by providing that the children's primary residence be with him. In September 1994, the children's motion to intervene was granted. The order included the following directives:

1. That Carissa, Nicholas and Dylan Miller are parties in interest in this matter, and may intervene in their own names as interested parties;

2. That Margaret H. Semple, Attorney of Portland, shall serve as their Attorney of Record on a pro bono basis.

In response to Clark's motion pursuant to M.R.Civ.P. 72(c), the court ordered the report of its interlocutory ruling.

### The claim of the children pursuant to the common law

There is no basis in the common law for the intervention of minor children as parties in the divorce action of their parents with an attorney of their choice. Although at common law minor children have a right to sue and be sued, children do not possess the requisite legal capacity to participate in litigation in their own names. 43 C.J.S. *Infants* § 215 (1978). This incapacity is premised on age, inexperience, and immaturity. *Id. See also*, 1 Kramer, *Legal 'Rights of Children*, § 11.02 (1994). Due to their incapacity, children must bring or defend a legal proceeding through an adult representative, such as a next friend[2] or a guardian ad litem.[3] 43

---

**2.** The term "next friend" is of English origin. *In re Beghtel's Estate*, 236 Iowa 953, 20 N.W.2d 421, 423 (1945). According to Blackstone, a next friend is any adult person who volunteers to undertake a minor child's legal cause. *Id.* (citing William Blackstone *Commentaries* at 464 (Sharswood ed.)). A next friend represents a minor child in the absence of a regularly appointed guardian. *Id.; Garcia v. Middle Rio Grande Conservancy District*, 99 N.M. 802, 664 P.2d 1000, 1006 (App.1983), *cert. denied*, 99 N.M. 740, 663 P.2d 1197 (1983), *overruled on other grounds, Montoya v. AKAL Security, Inc.*, 114 N.M. 354, 838 P.2d 971 (1992). There is no formal appointment required for a next friend. *Dye v. Fremont County School District No. 24*, 820 P.2d 982, 985 (Wyo.1991). A next friend is

not a party to the suit that she prosecutes on behalf of a minor child, but is an officer of the court. *Beghtel's Estate*, 20 N.W.2d at 423. A next friend is under the control of the court and can be removed if the best interest of the child so requires. *Id.* at 424.

**3.** A guardian ad litem is a representative appointed by a court to represent a child in a specific legal matter. Historically, guardians ad litem represented children who were defendants to an action, *see Dye*, 820 P.2d at 985, *Jones v. Cowan*, 729 S.W.2d 188, 189 (Ky.Ct.App.1987), but today they also represent children who have an interest in litigation other than as a defendant, such as in abuse and neglect proceedings, *see e.g.*, 22

C.J.S. *Infants* § 215. Similarly, intervention of minor children in an action may only be commenced by a guardian ad litem or a next friend. A person acting as either a next friend or a guardian ad litem is only a nominal party to the litigation; the child is the real party in interest. 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1570 (2d ed.1990) (discussing F.R.C.P. 17(a)). The next friend or guardian ad litem brings the minor child's claim or interest to the attention of a court.

The Maine Rules of Civil Procedure reflect this common law tradition. M.R.Civ.P. 17(b) provides in relevant part:

> **(b) Guardians and Other Representatives.** Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person. . . .

Pursuant to Rule 17(b), a minor child may only sue if the child has a representative, next friend, or guardian ad litem. The court is empowered to appoint such a representative for a child whenever protection of the child's interests demands it.

■ There is one exception to this rule in M.R.Civ.P. 80(e), that allows minor children

who are themselves married and parties to a divorce to proceed in their own capacity, without the need for a next friend or guardian ad litem. M.R.Civ.P. 80(e).[4] With respect to the children of these divorcing parties, however, the second sentence of Rule 80(e) reverts to the common law approach, and allows a court to appoint a guardian ad litem to represent the interests of those children. Read together, Rule 17(b) and Rule 80(e) confirm that Maine subscribes to the common law view of the legal capacity of children. Except for the unique situation presented by a divorce that involves minor children as parties, minor children may not under Maine law sue or be sued unless they are represented by a guardian or next friend. The same rule applies when children seek, as they do here, to become parties to an action by intervention.

■ There is another obstacle to the claim of the Miller children that they have a right to intervene as parties in this divorce action with an attorney of their choice. Pursuant to Maine law, children have "no authority to appoint an attorney." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 17.5 at 356 (1970) (citing *Bernard v. Merrill*, 91 Me. 358, 361, 40 A. 136 (1898)). We stated the rule emphatically in the *Bernard* case: "Even should the infant employ counsel, who procures the suit dismissed, the entry would be void, because the infant could not appear by attorney as the employment would be null." *Bernard v. Merrill*, 91 Me. at 361, 40 A. 136.[5] We see no reason to depart from this rule, which reflects the same concerns that account for the legal incapacity of children to sue or be sued—their age, inexperience and immaturity.

---

M.R.S.A. § 4005 (1992 & Supp.1995), and estate proceedings, *see e.g.*, 18–A M.R.S.A. § 1–403(4) (1981). A guardian ad litem is an officer of the court. The rights and duties of a guardian ad litem and a next friend are essentially the same. *Missouri ex rel. Dep't of Social Services, Div. of Child Support Enforcement v. Kobusch*, 908 S.W.2d 383, 385 (Mo.Ct.App.1995).

4. M.R.Civ.P. 80(e) provides:
   Notwithstanding the provisions of Rule 17(b), a minor party to any proceeding under this rule need not be represented by next friend, guardian ad litem, or other fiduciary, unless the

court so orders. Whenever it shall appear to the court to be in the best interests of a minor child of the parties to a proceeding under this rule, the court may on its own motion or on motion of a party, appoint a guardian ad litem. The court may make such provision for payment of a guardian ad litem by the parties as it deems necessary and proper.

5. A Maryland case that is a precursor to *Bernard* reveals that this rule is borrowed from the English common law. *See Deford v. State, Use of Keyser*, 30 Md. 179, 199 (1869).

Although the law imposes procedural limitations on children, it does so to protect their interests. In the realm of divorce and other family litigation, this protective purpose finds expression in the best interest standard. In Maine, as in the multitude of other states which have adopted the best interest standard, courts faced with the task of rearranging parental rights and responsibilities must strive for an outcome that will maximize the best interest of children. *See* 19 M.R.S.A. § 752 (Supp.1995). This standard protects children who lack the ability because of youth, inexperience, and immaturity to protect themselves. The protective purpose of this standard is also important in analyzing the constitutional claim of the Miller children.

### The constitutional claim of the children

■ The remaining issue is whether the intervention of the children as parties in the divorce action of their parents with an attorney of their choice is constitutionally required. Relying on the procedural due process guarantees of the Fourteenth Amendment of the United States Constitution, the Miller children contend that they have a significant liberty interest in the outcome of their parents' divorce because of the custodial issues involved. Assuming, *arguendo*, that the Miller children have a liberty interest in the outcome of their parents' divorce,[6] we must determine whether representation by a court-appointed guardian ad litem responsible for advocating for their best interests satisfies the requirements of procedural due process.

■ The test we use for evaluating procedural due process claims was set forth by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Fichter v. Board of Envtl. Protection*, 604 A.2d 433, 437 (Me. 1992) (applies *Eldridge* factors to due process challenge to denial of permit by Board of Environmental Protection); *Porter v. Hoffman*, 592 A.2d 482, 487 (Me.1991) (applies *Eldridge* factors to due process challenge to adoption proceedings). It consists of three factors which must be balanced against each other: (1) the private interests affected by the chosen procedure; (2) the risk of erroneous deprivation of those interests by the chosen procedure and the probable value, if any, of additional or substitute procedural safeguards; and (3) the countervailing state interest(s) supporting use of the challenged procedure. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

The interests involved in a divorce case include those of the divorcing parties and, if they have children, those of the children. The interests of the divorcing parents are financial, custodial, and emotional. As a result of divorce, financial and custodial rights and obligations are reconfigured. In addition, divorce terminates a legal partnership. For the children, there is an emotional fallout from the divorce, and an interest in the financial bargain struck by the divorcing parties, especially on child support. The most immediate interest of the children, however, is in the custodial outcome.[7] The position of

6. The Miller children read the landmark case of *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), and the subsequent cases of *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), and *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir.1977), as establishing that the children of divorcing parents have a liberty interest in voicing their preferences on custody. This proposition is by no means undisputed. Although a number of Supreme Court cases have concluded that freedom of personal choice in matters of family life is protected by the Due Process Clause of the Fourteenth Amendment, *see Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court has

pointedly declined to state whether children have a liberty interest in maintaining a relationship with a parent. *See Michael H. v. Gerald D.*, 491 U.S. 110, 130, 109 S.Ct. 2333, 2346, 105 L.Ed.2d 91 (1989) (stating, "[w]e have never had occasion to decide whether a child has a liberty interest, symmetrical with that of her parent, in maintaining her filial relationship."). We also have no occasion in this case to decide whether minor children have a constitutionally protected liberty interest in the outcome of the divorce of their parents.

7. In Maine divorce law, the term "custody" has been replaced with the term "primary residence." *See* 19 M.R.S.A. § 214(2)(A) & 752(5) (Supp.1995). In this opinion, the phrase "custodial outcome" therefore refers to the outcome of

the Miller children confirms this immediacy. They do not want to intervene in their parents' divorce because of the potential impact on them of the property, alimony, or child support bargains that will be struck. Rather, the Miller children wish to participate in the reconfiguration of their family and advocate their preferences because their custody is at stake. They argue that this interest is not and cannot be met by the guardian ad litem, who is duty-bound to represent their best interests as *she* sees them.[8] They emphasize that the guardian ad litem's recommendations on custody are directly contrary to their wishes.[9]

In making this point, the Miller children link their custodial interest in the outcome of the divorce to forceful advocacy of their preference by independent counsel representing them as parties, and cite the absence of such advocacy as increasing the likelihood of an erroneous deprivation of their custodial interest. Implicit in that argument is the further contention that the preference of the children should have primacy when the court makes its custody determination. We reject that proposition. The best interest standard set forth in 19 M.R.S.A. § 752(5) appropriately makes the preference of the child only one of many factors that the court must consider.[10]

---

Clark and Eileen's divorce with respect to the primary residence of the children.

The court awarded primary residence of the children to Eileen in its original order pending divorce:

> It is further ORDERED that the primary residence of said minor children shall be with the Plaintiff [Eileen] and the Defendant [Clark] shall have reasonable rights of parent-child contact including visitation with Defendant.

Subsequently, the court amended its order pending divorce and awarded primary residence of the children to Clark:

> The minor children of the parties, Carissa Noel Miller, Nicholas Russell Miller, and Dylan Patrick Miller shall maintain their primary residence with the Defendant, Clark Miller, with the Plaintiff, Eileen Miller, entitled to reasonable rights of parent/child contact including visitation with the Plaintiff.

8. The responsibilities of a guardian ad litem are currently embodied in 19 M.R.S.A. § 752–A (Supp.1995). At the time of the appointment of the guardian in this case, however, section 752–A had not been enacted. Instead, the responsibilities of guardians were elaborated in judicial opinions. According to those opinions, which formed the basis for the current statute, a guardian ad litem's central responsibility is to assist the court in its role as *parens patriae* to determine the best interests of the child(ren). *Gerber v. Peters*, 584 A.2d 605, 607 (Me.1990); *Ziehm v. Ziehm*, 433 A.2d 725, 729 (Me.1981).

9. In their brief, the children state that they have all expressed a preference for living with their mother. A review of the record, however, reveals that only Carissa and Nicholas have expressed a preference. According to the guardian ad litem, Dylan was "unable to express a meaningful preference" about where he wants to live. Dr. Robinson also did not report a preference on the part of Dylan.

10. 19 M.R.S.A. § 752(5) (Supp.1995) provides:

The court, in making an award of parental rights and responsibilities with respect to a minor child, shall apply the standard of the best interest of the child. In making decisions regarding primary residence and parent-child contact, the court shall consider as primary the safety and well-being of the child. In applying this standard, the court shall consider the following factors:

A. The age of the child;

B. The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;

C. The preference of the child, if old enough to express a meaningful preference;

D. The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;

E. The stability of any proposed living arrangements for the child;

F. The motivation of the parties involved and their capacities to give the child love, affection and guidance;

G. The child's adjustment to the child's present home, school and community;

H. The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;

I. The capacity of each parent to cooperate or to learn to cooperate in child care;

J. Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;

K. The effect on the child if one parent has sole authority over the child's upbringing;

K–1. The existence of domestic abuse between the parents, in the past or currently, and how that abuse affects:

(1) The child emotionally; and

(2) The safety of the child;

K–2. The existence of any history of child abuse by a parent; and

L. All other factors having a reasonable bearing on the physical and psychological well-being of the child.

The exclusion of children as parties in the divorce of their parents, and the related possibility that there will be no forceful advocacy for the custodial preference of the children, does not increase the risk of erroneous custody determinations that disserve the best interests of children. The guardian ad litem is already an advocate for the best interest of the children in all of its complex dimensions.[11] The narrow focus of an attorney for the children, who would be obligated to carry out their preferences regardless of the wisdom of such a course, might well increase the likelihood of a custody determination that is not in the best interest of the children.

Finally, the State has a substantial interest in divorce proceedings that do not include children as parties represented by counsel. Divorce litigation would be complicated exponentially by the involvement of children as parties. Children could object to any settlement offer. They would have the right to participate in discovery and at hearings to present witnesses on their own behalf and cross-examine witnesses called by the other parties. Multiple children could insist on multiple representation. The occurrence of any or all of these probabilities would protract divorce litigation beyond current bounds, and result in a substantial additional financial burden on both the parties and our court system.[12]

In our view, the use of guardians ad litem to protect the best interests of children in divorce proceedings fully satisfies any federal constitutional requirements. Accordingly, the Miller children are not entitled to intervene in the divorce action of their parents and be represented by independent legal counsel.

The entry is:

Judgment vacated. Remanded to the Superior Court with instruction to enter an order denying the children's motion to intervene and for further proceedings consistent with the opinion herein.

All concurring.

---

11. A guardian ad litem may also be made a full party in a divorce proceeding if the court concludes that it would be in the best interests of the children to do so. *See* 19 M.R.S.A. § 752–A. That determination was not made in this case.

12. The Miller children argue that this case involves only the "narrow" question of whether they, on the unique facts of this case, are entitled to intervene in the divorce action of their parents with an attorney of their choosing, and therefore we need not think about the implications of our decision for other divorce cases or custodial proceedings. We cannot indulge that myopic view. None of the implications noted are fanciful once intervention is permitted.