1999 ME 85

**Mary–Gay KENNEDY**

**v.**

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 3, 1999.

Decided May 28, 1999.

Thomas C. Bradley, (orally), Petruccelli & Martin, LLP, Portland, for plaintiff.

Andrew Ketterer, Attorney General, Christopher C. Taub, Asst. Atty. Gen., (orally), Augusta, for defendant.

Before CLIFFORD, RUDMAN, and DANA, JJ.

DANA, J.

[¶ 1] The State appeals from a judgment entered in the Superior Court (Sagadahoc County, *Delahanty, J.*) affirming a consent order entered in the District Court (W. Bath, *Field, J.*) awarding to Mary–Gay Kennedy her attorney fees and costs incurred in defending claims against her in her capacity as a guardian ad litem in custody proceedings. The State contends that the Superior Court (Cumberland County, *Brennan, J.*) erred in concluding that a guardian ad litem in a custody proceeding is a State employee as defined by the Maine Tort Claims Act (MTCA) and therefore entitled to a defense by the State. We disagree and affirm the judgment.

[¶ 2] In 1985, Kennedy was appointed as director of the Court Appointed Special Advocate Program (CASA).[1] From 1990 to 1993, in addition to serving as director of CASA, Kennedy also worked as a court appointed guardian ad litem in divorce cases involving disputes as to parental rights and responsibilities.[2] In each case, the court appointed her to investigate the facts bearing on the dispute and to issue a written report to the court summarizing her investigation and recommending what resolution of the dispute would be in the "best interest of the child" pursuant to 19 M.R.S.A. § 752 (Supp.1991).[3]

[¶ 3] In June 1993, Dennis Snyder, a disgruntled parent in one of the divorce cases, filed a complaint in the United States District Court for the District of Maine alleging that Kennedy, in her capacity as guardian ad litem for his child, had violated his civil rights. On receipt of the complaint, Kennedy asked the State to assume her defense pursuant to the MTCA, 14 M.R.S.A. § 8112 (Supp.1998).[4]

1. CASA was established within the Judicial Department "to provide volunteer lay persons to serve as court appointed special advocates or guardians ad litem under Title 22, section 4005, subsection 1, in child abuse and neglect cases." 4 M.R.S.A. § 1501 (1989). As director of CASA, Kennedy was appointed by the Chief Judge of the District Court, *id.* § 1502, to "recruit the services of qualified persons to serve as volunteer court appointed special advocates." *id.* § 1503. These volunteers are not "considered employees of the State for any purpose and ... receive no compensation." *Id.*

2. In Maine divorce law, the terms "parental rights and responsibilities," and "primary residence" are used in lieu of the term "custody." *See Miller v. Miller,* 677 A.2d 64, 68 n. 7 (Me.1996); *see also* 19 M.R.S.A. § 752 (Supp. 1991). The use of the term "custody dispute" in this opinion, therefore, means a dispute concerning parental rights and responsibilities pursuant to 19 M.R.S.A. § 752.

3. Title 19 M.R.S.A. § 752 (Supp.1991), *repealed by* P.L.1995, ch. 694, § B–1 (effective Oct. 1, 1997), and *recodified by* 19–A M.R.S.A. § 1653 (1998) provides in part:

 **5. Best interest of the child.** The court, in making an award of parental rights and responsibilities with respect to a minor child, shall apply the standard of the best interest of the child.

4. Title 14 M.R.S.A. § 8112(1) provides in part:

 **1. When a governmental entity is not liable.** A governmental entity, with the

The Attorney General denied her request, contending that the State was not obligated to assume her defense because she was not an employee of the State within the meaning of the MTCA. *See* 14 M.R.S.A. § 8102 (Supp.1998).[5] Kennedy retained her own counsel, and in September 1993, the court concluded that as a guardian ad litem in a custody dispute Kennedy had absolute immunity and dismissed the complaint.

[¶ 4] In July 1993, Brad Klein filed a complaint in the Maine District Court against Kennedy in her capacity as a guardian ad litem for his child. Again, Kennedy hired her own attorney, and the court concluded that Kennedy had absolute immunity as a guardian ad litem in a custody dispute and dismissed the action.

[¶ 5] In addition to these civil actions, Kennedy hired counsel to defend against two grievance complaints filed with the Board of Overseers of the Bar for her alleged misconduct as a guardian ad litem and as director of CASA. The Board determined that the grievances were without merit.

[¶ 6] After these matters were resolved, Kennedy filed a complaint against the State, claiming that pursuant to 14 M.R.S.A. §· 8112 the State was required to assume her defense or pay her legal fees in each of those proceedings. The State filed a motion for a summary judgment, contending that it had no duty to defend her because a guardian ad litem is not an employee of the State as defined by the MTCA.[6] The District Court (W. Bath, *Westcott, J* .) agreed with the State and granted a summary judgment in its favor. Kennedy appealed and the Superior Court (Cumberland County, *Brennan, J.*) vacated the District Court decision, concluding that a guardian ad litem in a custody dispute is an employee of the State as defined by the MTCA. On remand, the parties agreed to the amount of legal fees incurred by Kennedy in defense of her alleged misconduct as a guardian ad litem, and the District Court (W. Bath, *Field, J.*) issued a consent order granting a summary judgment in favor of Kennedy and awarding

---

consent of the employee, shall assume the defense of and, in its discretion, may indemnify any employee against a claim which arises out of an act or omission occurring within the course and scope of employment and for which the governmental entity is not liable. Except as otherwise provided herein, in lieu of assuming the defense of an employee, a governmental entity may pay the reasonable attorneys' fees and court costs of the employee. If the defense of its employee creates a conflict of interest between the governmental entity and the employee, the governmental entity shall pay the reasonable attorneys' fees and court costs of the employee.

. . . .

This subsection does not apply if notice is not required to have been filed as provided in section 8107 or if the employee· does not notify the governmental entity within 30 days after receiving actual written notice of the claim or within 15 days after the service of a summons and complaint, if the governmental entity is prejudiced by the lack of such notice.

**5.** Title 14 M.R.S.A. § 8102 provides in part:

 **1. Employee.** "Employee" means a person acting on behalf of a governmental enti-

ty in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds ... but. the term "employee" does not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity.

**6.** The State also argued that Kennedy had waived her right to a defense in all actions and allegations except the Snyder action by failing to make a timely request for defense. *See* 14 M.R.S.A. § 8112. The District Court concluded that Kennedy had waived her right to a defense in the grievance to the Board for her actions as director of CASA. The Superior Court agreed but found that Kennedy had not waived her right to a defense for her conduct as a guardian ad litem. Kennedy does not appeal the decision that she waived her right to a defense against the grievance for her conduct as director of CASA. The State does not appeal the decision that Kennedy has not waived her right to a defense in the actions and grievances against her in her capacity as guardian ad litem.

her $21,026.50 plus interest.[7] The State appealed the consent order pursuant to M.R. Civ. P. 76D, and the Superior Court (Sagadahoc County, *Delahanty, J.*) affirmed the order. This appeal followed.

[¶ 7] Pursuant to the MTCA, the State is required to "assume the defense of ... any employee against a claim which arises out of an act or omission occurring within the course and scope of employment ...." 14 M.R.S.A. § 8112(1).[8] The MTCA defines "employee" as "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation ...." *Id.* § 8102(1). Whether Kennedy acted as an "employee" within the meaning of the MTCA when she worked as a guardian ad litem in custody disputes "is predominantly a question of law for the court to determine." *See Cushman v. Tilton,* 652 A.2d 650, 651 (Me. 1995).

[¶ 8] While interpreting whether a party is an employee within the meaning of the MTCA, we have characterized the definition of employee as "broad." *See Taylor v. Herst,* 537 A.2d 1163, 1165 (Me.1988) (holding that a private physician who examined a recent arrestee at the request of the Sheriff's Department pursuant to the statute governing involuntary commitment was an employee within the meaning of the MTCA); *see also Clark v. Maine Med. Ctr.,* 559 A.2d 358, 360 (Me.1989) (holding that a private physician who examined a man who wanted to enter a state mental health hospital was an employee within the meaning of the MTCA).

[¶ 9] To determine whether this broad definition of employee encompasses a guardian ad litem in a custody dispute we examine the function of the guardian in such a proceeding.[9] Although we recognize that the role of a guardian ad litem may change depending on the type of proceeding, in custody cases, "the guardian ad litem has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client." *State ex rel. Bird v. Weinstock,* 864 S.W.2d 376, 384 (Mo.Ct. App.1993). The guardian ad litem "fills a void inherent in the procedures required for the adjudication of custody disputes.... Unhampered by the ... restrictions that prevent the court from conducting its own investigation of the facts, the guardian ad litem essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the 'best interest of the child.'" *Id.; see also Cok v. Cosentino,* 876 F.2d 1, 3 (1st

---

7. The District Court order appears to have awarded attorney fees and costs for the defense of the civil actions and the grievances filed with the Board. The State does not challenge the propriety of awarding attorney fees and costs incurred in the defense of a grievance filed with the Board. *See* 14 M.R.S.A. § 8112. We do not address this issue on appeal.

8. "[I]n lieu of assuming the defense of an employee, a governmental entity may pay the reasonable attorneys' fees and court costs of the employee." 14 M.R.S.A. § 8112(1).

9. Occupying a position somewhere between the court that appoints her and the child whose interests she represents, a guardian ad litem potentially fulfills two functions: officer of the court and attorney for the child. *See* Linda D. Elrod, *Counsel for the Child in Custody Disputes: The Time is Now,* 26 FAM. L.Q.

53, 57 (1992). The function of the guardian ad litem will often depend on the type of proceeding in which the guardian is appointed. *See Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40, 46–51 (1991) (discussing the varying functions of a guardian ad litem depending on the type of proceeding). For example, when appointed to represent a minor in a settlement negotiation she may act primarily as an advocate for the child, *see id.* at 51, whereas when appointed to see to the best interests of the child in a custody dispute she traditionally acts as an arm of the court, *see Kahre v. Kahre,* 916 P.2d 1355, 1362 (Okla.1995). Of course the line between the two roles is not always clear and the guardian may act as a "hybrid" of the court's adjunct and the child's advocate. *See Clark v. Alexander,* 953 P.2d 145, 153 (Wyo.1998).

Cir.1989) (concluding that the guardian ad litem in a divorce proceeding functions as an agent of the court).

[¶ 10] An examination of the case law reveals that in Maine, the guardian ad litem in custody proceedings functions as the traditional adjunct of the court. At the time of Kennedy's appointments, the responsibilities of a guardian were defined by judicial opinions.[10] *Miller v. Miller,* 677 A.2d 64, 69 n. 8 (Me.1996). The court has the power to "appoint a guardian ad litem for a minor appearing before it when the court finds that the minor's interests require separate representation." *Cyr v. Cyr,* 432 A.2d 793, 798 (Me.1981). Once appointed, the duty of a guardian ad litem in a divorce case is "to the court, and the scope of that duty lies within the parameters of the order of appointment." *Gerber v. Peters,* 584 A.2d 605, 607 (Me.1990). In fulfilling its duty to the court, the guardian is "to assist the court in its role as parens patriae to determine the best interests of the children." *Miller,* 677 A.2d at 69 n. 8 (citing *Gerber,* 584 A.2d at 607).[11]

[¶ 11] According to the orders appointing Kennedy to be guardian ad litem, Kennedy's role in the divorce proceedings was primarily that of an officer of the court, appointed to investigate the facts and report to the court.[12] In the Snyder matter, the court ordered Kennedy to "investigate to ascertain all facts pertinent to the best interests of" the child by reviewing records, interviewing individuals with relevant information, and subpoenaing, examining and cross-examining witnesses. After completing the investigation, Kennedy was to "make a written report of her investigation, findings and recommendations, and ... provide a copy of her report to each of the parties and the Court ...." In the Klein divorce, the order for appointment stated that Kennedy "shall investigate the circumstances concerning the child's welfare as it relates to the disposition of parental rights and responsibilities ...." The court authorized Kennedy to interview any person with relevant information, administer tests and examinations of the child or the parties, and review records and reports without regard to confidentiality. Kennedy was then to issue a report to the parties and the court.[13]

[¶ 12] As a guardian ad litem in custody proceedings, Kennedy functioned as an arm of the court, investigating the facts bearing on parental rights and responsibilities and reporting her findings and recommendations to the court. While investigat-

10. The responsibilities of a guardian ad litem in a custody dispute are now governed by 19–A M.R.S.A. § 1507 (1998). Based on judicial opinions which elaborated the common law responsibilities of a guardian ad litem, the statute reflects the traditional view that a guardian ad litem in a custody dispute is an adjunct of the court. *See Miller v. Miller,* 677 A.2d 64, 69 n. 8 (Me.1996); *see also* 19–A M.R.S.A. § 1507. The statute describes the guardian ad litem as "the court's agent," *id.* § 1507(6), and the guardian's primary duty is to conduct an investigation as ordered by the court and to make a written report with copies to each party and the court, *id.* § 1507(3)(A) & (B).

11. The State cites *In re Nikolas E.,* 1998 ME 243, ¶¶ 8–10, 720 A.2d 562, 564–65, and *In re Shane T.,* 544 A.2d 1295, 1298 (Me.1988), to support its position that the guardian ad litem is an advocate for the child, and therefore, works on behalf of the minor and not the court. As discussed above, *supra* n. 9, the role of the guardian ad litem changes depending on the type of proceeding. Because these cases do not involve guardians ad litem in custody disputes they are inapposite.

12. The District Court (Portland, *Rogers, J.*) appointed Kennedy as guardian ad litem in the Klein divorce on December 5, 1991. The Superior Court (Cumberland County, *Saufley, J.* (sitting by designation in the Superior Court)) appointed Kennedy as guardian ad litem in the Snyder divorce on March 28, 1992. The orders of appointment appear in the record on appeal.

13. We note that the Klein order does authorize Kennedy to represent the "child in any court proceeding." This suggests that Kennedy was authorized to act as an advocate as well as an investigator at least in the Klein matter. There is no evidence, however, that Kennedy did anything but investigate the facts and make her written report.

ing, Kennedy was "acting on behalf of" the court in its efforts to determine what would be in the "best interest of the child." *See* 14 M.R.S.A. § 8102(1); 19 M.R.S.A. § 752(5). Therefore, Kennedy was an employee within the meaning of the MTCA. *See Clark,* 559 A.2d at 360.

The entry is:

Judgment affirmed.

