Derry Family Division
No. 2006-730

IN THE MATTER OF RICHARD L. STAPLEFORD AND CHERYL STAPLEFORD

Argued: June 7, 2007
Opinion Issued: September 28, 2007

*Walker & Buchholz, P.A.*, of Manchester (*Kevin E. Buchholz* on the brief and orally), for the children.

*Law Offices of Paula J. Green, PLLC*, of Manchester (*Paula J. Green* on the brief and orally), for Cheryl Stapleford.

*Mark H. Campbell*, of Manchester, for Richard L. Stapleford, filed no brief.

HICKS, J. The parties' minor children, currently thirteen and fifteen years old, appeal a recommended order of a Marital Master (*Cross*, M.) approved by the Derry Family Division (*Sadler*, J.) denying their motion to intervene in their parents' divorce proceedings. We affirm.

The record supports the following. Cheryl Stapleford (mother) and Richard Stapleford (father) were married on October 17, 1992. On December 10, 2004, the parties filed for divorce. On July 27, 2005, the court appointed a guardian ad litem (GAL) to represent the interests of the parties' two children. On April 14, 2005, the Derry Family Division entered a temporary order awarding the mother primary physical custody of the children.

On May 17, 2006, the GAL submitted a preliminary report recommending, against their preference, that the children live primarily in Milford with their mother. Subsequently, upon his attorney's recommendation, the father retained Attorney Kevin Buchholz to represent the children. On August 9, 2006, Buchholz filed a motion, on behalf of the children, to modify the court's temporary orders. The court denied the motion because the children were not parties to the case. Buchholz then filed a motion to intervene on behalf of the children.

At a hearing held on the motion to intervene, Buchholz asserted a due process and statutory right of the children to be heard. He argued that the court cannot give substantial weight to the children's preferences consistent with RSA 461-A:6, II (Supp. 2006) if they are not allowed to intervene when a GAL makes a recommendation contrary to their preferences.

The mother argued that intervention was unnecessary because the GAL had already represented the children's preferences in his reports. The GAL explained that the children wanted to live in Chester with their father because "they lived in Chester their entire life, their grandparents are ill . . . and they want to be there for their grandparents." He also noted that their preference, in his opinion, had more to do with their familiarity with Chester than with whom they wanted to live. The GAL opposed intervention, asserting that it would unduly empower the children, encourage them to violate rules, make parenting harder, and otherwise confuse them.

The master denied the motion to intervene, finding that the GAL had represented the children's best interests and had adequately reported their preferences. He further noted in his order:

> The children's attorney offers more specific examples than the GAL of why the children feel as they do, but not only has the Court already heard some of those specifics from the parties themselves, but the examples are also not qualitatively different as to cause concern about the appropriateness of the Court's Temporary Order dated June 14, 2006.

On appeal, the children argue that: (1) they have a statutory right to intervene as parties to their parents' divorce; (2) the trial court committed an unsustainable exercise of discretion in failing to apply the proper intervention test and denying their motion to intervene; (3) they have a due process right to intervene; and (4) they were denied due process at the hearing on the motion to intervene. We address these issues in order.

■ The children argue that RSA 461-A:6, II creates a statutory right to intervene for mature minors. We review questions of statutory interpretation *de novo*. *State v. Boulais*, 150 N.H. 216, 218 (2003). The statute states, in pertinent part, that "[i]f the court finds by clear and convincing evidence that a minor child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature minor child as to the determination of parental rights and responsibilities." RSA 461-A:6, II. When construing a statute, we examine its language, ascribing the plain and ordinary meaning to the words used

by the legislature. *Boulais,* 150 N.H. at 218. We can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include. *Appeal of Astro Spectacular,* 138 N.H. 298, 300 (1994). Here, RSA 461-A:6, II does not address intervention at all, and we will not add those words to the statute. Accordingly, the statute does not create a right for mature minors to intervene in their parents' divorce proceedings.

We next address the children's claim that the court committed an unsustainable exercise of discretion in failing to apply our customary intervention test and denying intervention. The children point to the traditional intervention test, which provides: "A person who seeks to intervene in a case must have a right involved in the trial and his interest must be direct and apparent; such as would suffer if not indeed be sacrificed were the court to deny the privilege." *Snyder v. N.H. Savings Bank,* 134 N.H. 32, 35 (1991) (quotations, brackets and emphasis omitted).

In New Hampshire, this standard has never been applied to children seeking to intervene in their parents' divorce. The children arguably have a right and interest involved in the outcome of the divorce, most notably regarding the issue of custody. However, the children are minors, maturity notwithstanding, and minors do not have the same legal rights as do adults in the legal system. *See Miller v. Miller,* 677 A.2d 64, 66 (Me. 1996) ("[A]t common law ... children do not possess the requisite legal capacity to participate in litigation in their own names."). This is why the law provides for representation of a minor's interests through a GAL. *See* RSA 461-A:16 (Supp. 2006); *see also* 43 C.J.S. *Infants* § 329 (2004). The traditional intervention test, therefore, cannot be applied to the minors in this case to allow them to intervene in their parents' divorce. Accordingly, we cannot say that the trial court committed an unsustainable exercise of discretion in failing to apply the traditional intervention test.

The children next argue that their due process rights under the Fourteenth Amendment of the United States Constitution and Part I, Article 2 of the New Hampshire Constitution were violated at the hearing below and by the trial court's denial of their motion to intervene.

We first note that although the children's brief refers to "substantive due process," the brief addresses purely procedural due process concerns. Merely using the word "substantive" is insufficient to articulate a substantive due process argument. *Cf. Douglas v. Douglas,* 143 N.H. 419, 429 (1999) ("[A] mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." (citation omitted)). Accordingly, we will conduct only a procedural due process analysis.

We address the children's argument under the State Constitution, citing federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231 (1983). This court is the final arbiter of the due process requirements of the State Constitution. *In re Brittany S.*, 147 N.H. 489, 491 (2002).

We first address the children's argument that they have a due process right to intervene in their parents' divorce. The first step of a due process analysis is to determine whether a legally protected interest has been implicated. *Appeal of Town of Bethlehem*, 154 N.H. 314, 328 (2006). We will assume in this case, without deciding, that the "children have a [protected] liberty interest in the outcome of their parents' divorce." *Miller*, 677 A.2d at 68.

■ Next, we determine whether due process requires that the children be permitted to intervene in their parents' divorce by employing a three-prong balancing test, considering: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *In re Father 2006-360*, 155 N.H. 93, 95 (2007); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

We first address the children's interest. The minors' "most immediate interest ... is in the custodial outcome." *Miller*, 677 A.2d at 68. More specifically, the children's interest is in achieving the best possible outcome, whether that is in line with their preferences at the time or not. RSA 461-A:6 (Supp. 2006) includes many factors for the court's consideration, all of which aim to protect the children's interests by achieving the best outcome for them, in satisfaction of the first prong.

We next address the risk of an erroneous outcome for the children without their intervention. We find that the children's interests are well protected by the existing process. "The [GAL] is already an advocate for the best interest of the children in all of its complex dimensions." *Id.* at 70; *see also* RSA 461-A:16. RSA 461-A:16 ensures that the GAL conducts a detailed investigation and advocates for the children's best interests. The court need not accept the GAL's recommendation, and the court may agree or disagree with a minor's wishes. Poorly performing GALs are subject to fines and disciplinary action under RSA 461-A:16, VI(c), (d). Further, the adversarial nature of a divorce proceeding provides an effective check and balance system. A parent who opposes the GAL's recommendation will likely expose any mistakes made by the GAL, through cross-examination or otherwise.

Finally, we examine the State's interest, including the function involved and the fiscal and administrative burdens that intervention by the children would entail. In divorce proceedings, the State's primary interest is "the best interests of the child." RSA 461-A:6, I. As discussed above, we find that the best interests of the children are well-protected by the current system. Additionally, we agree with *Miller* that "[d]ivorce litigation would be complicated exponentially by the involvement of children as parties." *Miller*, 677 A.2d at 70. If children were allowed to intervene, they could participate in discovery, depose and cross-examine witnesses, and appeal the court's ruling. Should siblings disagree among themselves, they could each hire their own attorney to advocate for their individual preferences. We need not further detail the chaos that would ensue if we were to hold that every mature minor has a due process right to intervene in their parents' divorce litigation.

Accordingly, after weighing the above factors, we hold that the children have no due process right to intervene in their parents' divorce. Because the State Constitution is at least as protective of individual liberties in these circumstances as the Federal Constitution, *see In re Samantha L.*, 145 N.H. 408, 414 (2000); *Mathews*, 424 U.S. at 335, we reach the same result under the Federal Constitution.

Given that we hold, as a matter of law, that the children have no right to intervene in their parents' divorce, we need not address their argument that they were denied due process at the hearing on the motion to intervene.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.