730 A.2d 1260

**Austin AUCLAIR et al.**

**v.**

**Alison AUCLAIR et al.**

**No. 5764, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

June 15, 1999.

2

4

Rudolf A. Carrico, Jr., LaPlata, for appellants.

Gregory T. Douds (Tate & Bywater, Ltd. on the brief for appellee, Alison Auclair), LaPlata (David A. Dunwiddie, Bryans Road, on the brief for appellee, Nicholas Auclair), for appellees.

Argued before DAVIS, SONNER and ADKINS, JJ.

**6**

DAVIS, Judge.

On June 27, 1981, Alison and Nicholas Auclair, appellees, were married. Two children, Austin and Vanessa, were born of the marriage. The family also adopted two children, Jordan and Brenton. On November 17, 1997, Alison filed a complaint for divorce and custody of Austin, Jordan, and Vanessa in the Circuit Court for Charles County.[1] Nicholas filed a timely counter-complaint for divorce and joint custody of Austin, Jordan, and Vanessa. Alison subsequently was awarded *pendente lite* custody of Austin, age 16, Jordan, age 14, and Vanessa, age 12.[2] On February 5, 1998, the court appointed Diana Donahue as guardian *ad litem* for the Auclair children, instructing that she was to represent their interests in, and submit recommendations regarding the parents' custody dispute. On March 25, 1998, Alison filed a motion to remove Donahue as guardian *ad litem*. The trial court granted Alison's request and, on April 14, 1998, the court appointed Cecilia Keller to replace Donahue.

On November 19, 1998, Rudolf A. Carrico, Jr., was hired to represent Austin and Vanessa, appellants, in the divorce and custody proceedings. Carrico filed an entry of appearance on November 23, 1998, explaining that appellants are mature, intelligent children and they had requested that he represent them. On December 15, 1998, the court (Nalley, J.) refused to recognize Carrico's entry of appearance. A motion to intervene was filed and the merits of the motion were argued at a December 22, 1998 hearing. Alison appeared in support of the motion for intervention; Keller and Nicholas appeared in opposition to the motion. Following the trial court's December 28, 1998 denial of appellants' motion to

---

1. Brenton, age 13, has been removed from the Auclair home and presently resides with long-term foster parents. Alison's complaint did not request that the court alter this arrangement and, although Nicholas visits regularly with Brenton, he also believes Brenton's foster arrangement is preferable.

2. At Alison's request, Jordan now resides with Nicholas. A consent order, dated July 13, 1998, confirms the change in *pendente lite* custody.

intervene, a timely appeal was noted.[3] Appellants present for our review three questions that we have rephrased as follows:

I. Did the lower court commit reversible error when it denied appellants' motion to intervene?

II. Did the lower court commit reversible error by denying the minor children the right to have an advocate for their preferences participate in their parents' custody dispute?

III. Did the lower court commit reversible error when it instructed Carrico that he could not speak with the minor children?

For the reasons discussed herein, we affirm in part and vacate in part the judgment of the lower court.

## FACTS

On November 2, 1997, Alison filed a complaint for divorce. At a January 21, 1998 hearing, *pendente lite* custody of Austin, Vanessa, and Jordan was granted to Alison. In addition, on February 8, 1998, the trial court appointed Donahue as the children's guardian *ad litem*. The order stated that Donahue would represent the interests of the children in all of the matters relating to their parents' divorce and would have the authority to waive or assert the children's privileges, including the psychiatrist-patient privilege. Donahue was further instructed to submit her recommendations of the children's best interests to the court.

Donahue submitted her report on March 5, 1998, after talking with the children, interviewing their therapists, and meeting with counsel for each of the parents. Under a separate and distinct subheading of the report, Donahue addressed the preferences of Austin, Vanessa, and Jordan, stating that each of the children made a virtually identical request

---

3. The denial of a motion to intervene is an appealable final order. *See Montgomery County v. Bradford*, 345 Md. 175, 185 n. 1, 691 A.2d 1281 (1997).

to reside with their mother and to visit their father only when they desire. The report further explained:

> What is apparent now is that the parents are locked in a struggle for control; and the children are prime weapons. Based on conversations with some of the professionals involved with various family members, the undersigned believes that the children were affected by the separation, to the point of missing their father; but quickly were taught that the expression of such feelings was not acceptable.
>
> The level of emotional investment by the children in the mother's issues and perspective is disconcerting.

. . .

> It seems that they are all being given adult information and are expected to express adult concerns and desires for resolution; and the adult they are expressing is their mother. These children are all very articulate and say very clearly what they want. However, the virtual identity of words and phrases used brings to mind old films of brainwashing techniques used by Communist forces against American soldiers in the 40's and 50's. The only difference is that these children are more animated than the brainwashing victims from the films. They seem to have internalized the messages they are expressing. At the same time, the father in this matter is not without responsibility for the children's situation. He seems to fail to take into account the importance of all three children that they be able to retain some control over their own lives during this process.

. . .

> It has been reported that, when the children try to discuss the importance of continuing to participate in activities, the father's response is that they will participate in whatever he says, because he is the father.

. . .

The extent to which such reports are accurate is not something the undersigned can determine; but it is clear that the children, whether rightly or wrongly, do not see his actions in recent months as being motivated primarily by concern for them.

In her conclusion and recommendation, Donahue advised that the children should maintain "some sort of regular contact with their father." Donahue recognized, however, that the children do not want a visitation schedule and would rather visit their father when they want. Thus, Donahue stated that she felt "bound to make such a recommendation to the [c]ourt."

On March 25, 1998, Alison filed a motion to remove Donahue as the children's guardian *ad litem*. She urged that the children have "extreme reservations" about Donahue's representation of them and "have continued to voice their protest and reluctance to meet and/or discuss any issues relating to this matter" with Donahue. Alison requested that the trial court remove Donahue from the case and permit Austin and Vanessa to be "unaided by any outside counsel or influence from the [c]ourt."

In response, Donahue agreed that Austin and Vanessa apparently did not want to meet with her and had refused to meet with her on many occasions. Donahue suggested, therefore, that she be removed from her appointment. She also recommended that the court continue to monitor the children and appoint new counsel for them. Nicholas also did not oppose the motion and expressly agreed with Donahue's suggestion that new counsel should be appointed for the children. In an order filed on April 14, 1998, the trial court removed Donahue and appointed Cecilia Keller to replace Donahue as the children's guardian *ad litem*.

Keller has also encountered great difficulty as the children's guardian *ad litem*. Despite several requests, she has been denied the opportunity to meet with the children in their home. For reasons not articulated to this Court, or the court

below, Austin and Vanessa do not want to speak with Keller and she is not welcome in Alison's home. Per the court's request, Keller submitted an initial report to the court, relaying appellants' desires to visit with their father only when they wish as well as her independent suggestion of the children's best interest.[4] The trial court has also received numerous letters from Austin and Vanessa, in which they vehemently express their preference to live with their mother and visit their father at their own discretion and emphatically relay their concerns about their mother's expenses.

On July 30, 1998, Keller filed a motion for mental evaluation of the parties and the children, explaining that the evaluations would be of great assistance to a determination of the children's best interest, given the reports of Alison, Austin, and Vanessa that Nicholas was "stalking and harassing" them, Alison's refusal to comply with court-ordered visitation, and Jordan's letter to Keller stating that he was "in a 'lock-down' in his home while he was in [Alison's] custody." In an August 7, 1998 order, the court instructed that each party and the children in his or her *pendente lite* custody submit to mental evaluations. Although Nicholas complied with the order by allowing himself and Jordan to receive a mental evaluation, Alison has failed to comply. Alison also continued to violate the court's visitation order. Consequently, on August 11, 1998, Nicholas filed a petition for contempt for Alison's failure to provide the ordered visitation. In addition, on October 29, 1998, Keller filed a second motion in support of the mental evaluations.

On November 23, 1998, Carrico purported to enter an appearance on appellants' behalf. The trial court refused to recognize the appearance and, on December 17, 1998, Carrico filed a motion to intervene, urging that Austin and Vanessa requested his representation in their parents' lawsuit. A

---

4. Soon after leaving Alison's home to reside with Nicholas, Jordan asserted that he would like to remain in the permanent custody of his father and only visit Alison, Austin, and Vanessa in a public location, such as the local mall.

hearing was held on December 22, 1998, addressing the motion to intervene as well as Alison's failure to comply with the orders for visitation and mental evaluations. The court concluded that appellants were not entitled to intervene as a party and that Alison had failed to comply with both the visitation order and the mental evaluation order. This appeal was timely noted from the court's January 28, 1999 order denying the motion to intervene.

## DISCUSSION

### I

Appellants contend that the trial judge committed reversible error by denying their motion to intervene. In support of this contention, they maintain that their mother is not representing their interests because she has violated court orders on several occasions. The children also aver that Keller does not and is not able to communicate their interests to the court because there is a conflict of interest between their interests and the interests of their brother, Jordan. They further insist that Keller has failed to represent them zealously, as demonstrated by her suggestion that they undergo a mental evaluation. Finally, Austin and Vanessa contend that intervention should be permitted because Austin is sixteen-years-old and a sixteen-year-old child may petition for change of custody on his or her own behalf.

Appellants apparently assert that they are entitled to intervene as a matter of right.[5] Intervention of right is governed by Md. Rule 2–214(a) (1999), which states:

Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the

---

**5.** Appellants' brief does not state whether the motion to intervene was for intervention of right or permissive intervention. No objection was made to the trial judge's treatment of their contention as a motion for intervention of right. Therefore, we also shall treat the argument as a motion for intervention as a matter of right.

person claims an interest relating to the property or trans-
action that is the subject of the action, and the person is so
situated that the disposition of the action may as a practical
matter impair or impede the ability to protect that interest
unless it is adequately represented by existing parties.

Four requirements must be met before an individual is enti-
tled to intervention of right: "(1) the application for interven-
tion must be timely; (2) the applicant[s] must have an interest
in the subject matter of the action; (3) disposition of the action
would at least potentially impair the applicant[s'] ability to
protect [their] interest; and (4) the applicant[s'] interest must
be inadequately represented by existing parties." *Stewart v.
Tuli*, 82 Md.App. 726, 730, 573 A.2d 109 (1990) (quoting
*Hartford Ins. Co. v. Birdsong*, 69 Md.App. 615, 622, 519 A.2d
219 (1987)).

■ Appellants satisfy three of the four requirements for
intervention. First, there is no dispute that the motion for
intervention was timely filed. Likewise, it is beyond dispute
that Austin and Vanessa have an interest in the subject matter
of the litigation. This interest is clearly reflected in the best
interest of the child standard that is used to resolve custody
determinations. *See Leary v. Leary*, 97 Md.App. 26, 48, 627
A.2d 30 (1993). The best interest standard includes consider-
ation of the child's preference for custody and visitation;
however, the child's best interest—not his or her wishes—is
the basis for the trial court's ruling. The Court of Appeals
has penned:

> [T]he child's own wishes may be consulted and given weight
> if he [or she] is of sufficient age and capacity to form a
> rational judgment.
>
> . . .
>
> The desires of the child are consulted, not because of any
> legal right to decide the question of custody, but because
> the court should know them in order to be better able to
> exercise its discretion wisely. It is not the whim of the child

that the court respects, but [the child's] feelings, attachments, reasonable preference and probable contentment.

*Ross v. Pick,* 199 Md. 341, 353, 86 A.2d 463 (1952), *quoted in Leary,* 97 Md.App. at 48, 627 A.2d 30.

Additionally, the children have a substantial interest in the outcome of their parents' custody dispute and are individuals with rights recognized by the courts,[6] even though they are not formally recognized parties to the lawsuit. *See Lapides v. Lapides,* 50 Md.App. 248, 253, 437 A.2d 251 (1981). As minors, children are not legally competent to act on their own behalf. *See Miller v. Miller,* 677 A.2d 64, 66 (Me.1996); *In re Marriage of Hartley,* 886 P.2d 665, 672 n. 9 (Colo.1994). Indeed, "[t]he very reason for contested custody proceedings is that the children involved are not yet mature enough to be self-determining." *See In the Interest of J.P.B. and C.R.B.,* 419 N.W.2d 387, 391 (Iowa 1988); *In re Marriage of Rolfe,* 216 Mont. 39, 699 P.2d 79, 85 (1985). Thus, Austin and Vanessa have a legally-recognized interest in their parents' lawsuit, even though they are unable to be parties to the litigation. *See Lapides,* 50 Md.App. at 253, 437 A.2d 251.

▇ Third, disposition of the custody dispute has the potential to impair appellants' ability to protect their interests. A custody order may not be altered absent a material change in circumstances warranting a modification. *See Jordan v. Jordan,* 50 Md.App. 437, 443, 439 A.2d 26 (1982). A child's parents, as well as any child at least sixteen years of age, may petition the court to modify the order. *See* MD.CODE (1999 Repl.Vol.), FAMILY LAW (F.L.) § 9–103. Nevertheless, the heightened showing required for a change of custody persuades this Court that, after a child's custody has been resolved, his or her ability to change the order is at least potentially impaired by the initial determination.

---

6. *See Application of Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (concluding that the rights of children are entitled to constitutional protection).

■ In the instant case, the trial court denied the motion for intervention, reasoning that the children's interests were adequately represented in the lawsuit. Our analysis also turns on the fourth prong of the test, namely, whether the children's interests are inadequately represented by the existing parties. If the children's interests are not identical to an interest already represented, they must be permitted to intervene as a matter of right. On the other hand, if their interests are identical to that of an existing party, a "compelling showing must be made in order to demonstrate inadequacy of [the existing] representation" and, thus, permit intervention as a matter of right. *See Maryland Radiological Soc., Inc. v. Health Servs. Cost Review Comm'n.,* 285 Md. 383, 391, 402 A.2d 907 (1979). In other words, the applicant may intervene "only if he [or she] can show collusion, nonfeasance, or bad faith on the part of those existing parties with whom his [or her] interest coincides." *Id.*

## The Children's Mother

■ Appellants correctly assert that their mother is not able to adequately represent their interest in the lawsuit. In *Ford v. Ford,* 371 U.S. 187, 193, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962), the Supreme Court ruled that parents involved in a custody dispute frequently are unable to make decisions relating to their children's custody because "the estrangement of husband and wife beclouds parental judgment with emotion and prejudice." Thus, the Court concluded that a trial judge's determination of a child's best interests during a custody lawsuit is better informed when a third party is assigned the task of determining the child's interests. *Id.*

In Maryland, the Court of Appeals reached a similar decision, ruling that, when parents are involved in a "continuing custody battle," they cannot make legal decisions that relate to the underlying lawsuit on the child's behalf. *See Nagle v. Hooks,* 296 Md. 123, 127–28, 460 A.2d 49 (1983). In *Nagle,* a ten-year-old boy was at the center of his parents' ongoing dispute over custody. Although the boy's mother was awarded permanent custody, the boy's father filed for a change of

custody. At trial, the father attempted to have the boy's psychiatrist testify regarding diagnosis and treatment of the boy's mental or emotional disorder. As a result, an issue arose regarding who was entitled to waive the boy's statutory psychiatrist-patient privilege.

The Court of Appeals ruled that it was inappropriate for the parents to control the privilege and the trial court was required to appoint a guardian *ad litem* to act in the child's best interest:

> Although arguably the parent who pursuant to court order has custody of a child could qualify as a "previously appointed guardian" under section 9–109(c), it is patent that such custodial parent has a conflict of interest in acting on behalf of the child in asserting or waiving the privilege of nondisclosure. We believe that it is inappropriate in a continuing custody "battle" for the custodial parent to control the assertion or waiver of the privilege of nondisclosure.
>
> . . .
>
> Keeping in mind "the best interest of the child," we believe the appointment of an attorney to act as the guardian of the child in the instant matter is required. Furthermore, the appointment of a neutral third party would eliminate the very real possibility, as may exist in this case, of one of two warring parents exercising the power of veto for reasons unconnected to the polestar rule of "the best interests of the child."

*Id.* at 127–128, 460 A.2d 49 (footnote omitted).

The policy set forth by the *Nagle* Court is applicable to the instant case. Austin and Vanessa are unable to represent themselves in this dispute. Although Alison has *pendente lite* custody and may otherwise be deemed the parent responsible for acting on the children's behalf, Alison is a party to the dispute. Consequently, "it is patent that [she] has a conflict of interest in acting on behalf of the [children]." *Id.* at 127, 460 A.2d 49. Accordingly, the interests of Austin and Vanessa are

best represented by a neutral third party. *See id.* at 128, 460 A.2d 49.

Furthermore, an attorney for the children's parents "cannot be expected to truly represent the children because [the attorney] ultimately owe[s] loyalty to the[ ] client." Tari Eitzen, *A Child's Right to Independent Legal Representation in a Custody Dispute*, 19 Fam. L.Q. 53, 62 (1985). *See also Veazey* v. Veazey, 560 P.2d 382, 388 (Alaska 1977) (noting that, "[i]n a number of instances, [an] attorney [for a parent] cannot assert the interests of the child without creating a conflict of interest"), *overruled on other grounds, Deivert v. Oseira*, 628 P.2d 575 (Alaska 1981). Alison's attorney owes an obligation to represent Alison's interests with loyalty and zeal. *See* Md. Rules of Professional Conduct, Rule 1.2. Consequently, he cannot also zealously represent the interests of Austin and Vanessa.

**The Guardian *Ad Litem***

■ In actions concerning a minor child's custody, visitation, or child support, "the court may: (1) appoint to represent the minor child counsel who may not represent any party to the action; and (2) impose against either or both parents counsel fees." F.L. § 1–202. Recognizing that children may become pawns in their parents' fight to prevail on issues such as custody, visitation, or child support, *see Lapides*, 50 Md. App. at 250, 437 A.2d 251, the legislature has vested in trial judges the authority to appoint attorneys, or guardians *ad litem*, to serve the crucial function of representing children's rights and interests in their parents' custody disputes. *See* F.L. § 1–202. Thus, it has become the policy of this State, as enunciated in *Nagle*, that, when the parents are involved in a custody dispute and the child requires representation, the "best interest of the child" may require appointment of a neutral attorney to act as the child's guardian. *See Nagle*, 296 Md. at 128, 460 A.2d 49. Our concern is whether a court-appointed guardian is an adequate representative of the children's interests. *See Stewart*, 82 Md.App. at 730, 573 A.2d 109. At oral argument before us, the issue, as framed, was

whether the guardian could act, without conflict, as advocate for the children, transmitter of their positions, and court's investigative agent charged with making a recommendation.

Although the labels and the roles of child representatives in custody disputes vary, over half of the states in this country have enacted statutes enabling trial courts to appoint independent representatives for children. *See* Eitzen, 19 Fam. L.Q. at 66. With the exception of only a few states, the role of the independent representatives, or guardians *ad litem*, is to represent the child's best interests. In *Clark v. Alexander*, 953 P.2d 145, 152 (Wyo.1998), the Supreme Court of Wyoming explained that

> [t]he guardian *ad litem's* role has been characterized as investigator, monitor, and champion for the child.

> . . .

> ██ In custody matters, the guardian *ad litem* has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. In essence, the guardian *ad litem* role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian *ad litem*, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the *ex parte* and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian *ad litem* essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the "best interests of the child." Although the child's preferences may, and often should, be considered by the guardian *ad litem* in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding

on the guardian. Thus, the obligations of a guardian *ad litem* necessarily impose a higher degree of objectivity on a guardian *ad litem* than is imposed on an attorney for an adult.

*Id.* at 152 (citations omitted). The *Clark* Court's explanation of a guardian's flexible role is consistent with the role Maryland Courts have assigned to guardians *ad litem.* This Court has observed that, "[w]hen the [trial] court appoints an attorney to be a guardian *ad litem* for a child, the attorney's duty is to make a determination and recommendation after pinpointing what is in the best interests of the child." *Leary*, 97 Md.App. at 40, 627 A.2d 30.

The three state appellate courts that have had the opportunity to address the question raised by appellants all agreed that a child is not entitled to intervene in his or her parents' custody dispute. *See Miller, supra; Hartley, supra; J.A.R. v. County of Maricopa*, 179 Ariz. 267, 877 P.2d 1323 (1994). In *Miller*, the Supreme Judicial Court of Maine concluded that minor children are not entitled to intervene in their parents' custody dispute. *See Miller*, 677 A.2d at 70. Pursuant to statute, trial courts in Maine may appoint a guardian *ad litem* for children in custody disputes. *See id.* at 67. The Court noted, however, that there is no statutory provision entitling children to an additional representative. *See id.* at 67–68. Furthermore, a child's rights are not violated by the denial of a motion to intervene. *See id.* at 70. The Court explained that, although the children had an interest in the outcome, there was little risk of an erroneous determination of their interests because the trial court and the guardian *ad litem* were obligated to act in the children's best interests and consider their preferences for custody. *See id.* at 68–70. Finally, the Court concluded that the State had a substantial interest in not including children as parties represented by counsel, because allowing the intervention would complicate the proceedings and "result in a substantial additional financial burden on both the parties and [the] court system." *Id.* at 70 (footnote omitted).

Similarly, the Supreme Court of Colorado has ruled that, when a state statute provides for a court-appointed guardian *ad litem,* the child is not also entitled to intervene on his or her own behalf with an attorney of his or her choice. *See Hartley,* 886 P.2d at 674. Analogous to F.L. § 1–202, the relevant Colorado statute provides that the trial court has the discretion to appoint a guardian *ad litem* in custody lawsuits. *See id.* at 673. Denying the child's motion to intervene, the Court concluded that the child's wishes, as well as the child's best interests, were already represented by the boy's guardian *ad litem. See id.* at 672. Furthermore, the Court determined that the child was not entitled to hire his own attorney, explaining that an attorney advocate was not statutorily provided for and that, because his interests were already a mandatory consideration of the trial court, there was no need for an additional attorney to represent him at the proceedings. *See id.* Thus, despite the child's extraordinary interest in the outcome of the custody dispute, there was no good cause for allowing the child to intervene as a party when his interests were already a requisite consideration of the guardian and the trial court. *See id.* at 673.

A similar result must be reached in the instant case. The General Assembly has provided trial courts with the discretion to appoint a guardian *ad litem. See* F.L. § 1–202. The appointed attorney may fill various roles, including reporting the children's preferences to the court, investigating the reasons for the children's preferences, and making an independent determination of their best interests. *See Leary,* 97 Md.App. at 40, 627 A.2d 30. No additional representation, however, is provided by Maryland's statutory scheme. Because Keller is obligated to represent the children's best interests, the interests she will advocate are identical to the children's interests, even though the children may not agree with her best-interest recommendation. Keller's determination of their best interests, as well as the trial judge's ultimate ruling, will take into consideration the children's wishes. The children are not entitled to additional representation of their preferences.

■ Our conclusion is not altered by the children's complaints that Keller is not zealously advocating their wishes and is representing Justin, who has expressed a different preference. Keller's representation of the children has been consistent with the guidelines this Court enunciated in *Leary*. *See Leary*, 97 Md.App. at 40, 627 A.2d 30. On several occasions, Keller has arranged to meet with Austin and Vanessa to learn their concerns about and preferences for custody and visitation. In her report to the trial court, Keller, under a separate and distinct heading specifically devoted to the sole issue, addressed the children's preferences. She stated unequivocally that Vanessa and Austin wish to remain in their mother's custody and are not in favor of a regular visitation schedule with their father. In addition, she made clear that, due to school and social obligations, they would prefer to visit their father only "when it suits them." Despite the children's assertions that they are unable to communicate well with Keller,[7] she has articulated the children's preferences as expressed in their letters to the trial judge. We are not aware of any instances in which Keller failed to inform the court of the children's wishes.

■ In addition, the fact that Keller filed a motion in support of mental evaluations of Alison, Nicholas, and each of the children does not alter our conclusion. The motion asserts that evaluations would assist the court in making its best interest determination, particularly in light of the parents' inability to cooperate, the children's high level of involvement in the parents' dispute, and the numerous allegations of mistreatment of the children. Keller did not suggest that appel-

---

7. An identical assertion was made about their first guardian. Although the children urge that they are unable to communicate well with the guardians, they offer no explanation for their discomfort or distrust. In addition, it is difficult to conceive of how these children could reach the conclusion that they lack confidence in or are unable to communicate well with the guardians when they have failed to meet with either guardian for more than one or two occasions. In its oral decision denying the children's motion to intervene, the trial court observed that "part of the problem here is that neither Ms. Donahue nor Ms. Keller has been able to deal with these kids one-on-one." We agree.

lants are in favor of the evaluations. Her motion was made pursuant to the children's best interests and, thus, was consistent with her role as their guardian.

Furthermore, a guardian's representation of the best interests of siblings with differing preferences is not an impermissible conflict of interest. *See Clark*, 953 P.2d at 153 (stating that the hybrid approach to representation for children "necessarily excuses strict adherence to *some* rules of professional conduct"). This conclusion is consistent with the comment accompanying Rule 1.14, which notes that "[w]hen the client is a minor ... maintaining the ordinary client-lawyer relationship may not be possible in all respects." Md. Rules of Professional Responsibility, Rule 1.14. There is no indication that either Keller's representation of Jordan or her best interest recommendations have impaired her ability to represent also the desires of Austin and Vanessa. Although Jordan would prefer a custody and visitation arrangement different from that preferred by Austin and Vanessa, Keller has made this distinction clear to the trial court by addressing Jordan's views in a separate section of her report. She has never suggested to the court that the three children have the same preferences for custody and visitation. Keller's representation of each child's best interest is not, therefore, an impermissible conflict of interest.

As a final matter, we are not persuaded by appellants' argument that they are entitled to intervene because children sixteen years of age or older may file a petition for a modification of custody on their own behalf. The plain language of F.L. § 9–103, which is entitled "Petition by child to change custody," provides that "[a] child who is 16 years old or older and who is subject to a custody order or decree may file a petition to change custody." F.L. § 9–103(a). In addition, F.L. § 9–103 expressly states that the child may petition the court in his or her own name and does not need to proceed by guardian or next of friend. *See* F.L. § 9–103(b). Because such language is unambiguous, there is no need to look further to determine the legislative intent. *See Elza v. Elza*, 300 Md.

51, 59, 475 A.2d 1180 (1984). The General Assembly could have enacted legislation that provided that, upon reaching the age of sixteen, a child should be able to request a change of custody in his or her own name even when he or she is not subject to a custody order or decree. The fact that the legislature deliberately decided not to provide for a minor to proceed in his or her own name when there is no pre-existing custody order, indicates a clear intent not to expand the scope of F.L. § 9–103.

Although the legislature could have expanded F.L. § 9–103 by expressly so providing, allowing children to petition for modification of custody but not permitting them to intervene in an initial custody determination is a logical distinction. An initial custody hearing provides greater protections of a child's best interests. Most important, the custody dispute necessarily places the child's best interests at issue. At the hearing, the parents present arguments concerning the child's best interests and a guardian *ad litem* is often appointed to investigate the best interests of the child. In addition, the trial judge, who typically interviews the child to learn his or her preferences, is bound by the polestar rule of the best interests of the child.

After a custody determination is made, however, the court will not alter a custody order until petitioned by a party who demonstrates that there has been a material change in circumstances affecting the child. *See Levitt v. Levitt*, 79 Md.App. 394, 398, 556 A.2d 1162 (1989). Thus, the court may not reconsider the best interests of the child on its own initiative. Section 9–103 allows a child to petition for change of custody, even when his or her parents may not wish to challenge the existing order. Furthermore, although the court may interview a child during a custody modification hearing, *see generally Giffin v. Crane*, 351 Md. 133, 139–40, 716 A.2d 1029 (1998), a trial judge may be less willing to conduct a second interview. The judge may also be unwilling to appoint a guardian *ad litem* to conduct a new investigation of the child's best interests. Granting a child the right to petition for a change of custody on his or her own behalf, provides an

alternative for a child who otherwise might receive fewer protections after an initial custody order is imposed.

The trial court, consequently, did not err by denying the children's motion to intervene in their parents' custody dispute.

## II

 Appellants, nevertheless, argue that they are entitled to an advocate for their preferences. Indeed, Austin and Vanessa urge that they are entitled to choose the attorney who they would like to advocate their preferences. In *Leary*, this Court recognized that the roles assumed by a guardian *ad litem* "may lead to an inherent tension between the attorney's role as advocate for the child and his or her duty to the court." *Leary*, 97 Md.App. at 40, 627 A.2d 30. We also acknowledged that one of the most problematic situations for a guardian arises when "the child expresses an interest in living with one parent, yet the attorney believes that this would not be in the child's 'best interests.' " *Id.* at 42, 627 A.2d 30. The preference of the child, we explained, is a relevant factor for the guardian's and the trial court's consideration. *See id.* at 48, 627 A.2d 30. Ultimately, the child's "best interest," not the child's "wishes," are decisive on the issue of custody. *See id.* Thus, in *Leary*, we concluded that the guardian acted properly by reporting the child's preferences to the court and recommending the custody arrangement that she believed was in the child's best interest. *See id.* at 49, 627 A.2d 30.

 There can be no question that Austin and Vanessa have preferences for the outcome of the litigation. As explained *supra*, their preferences are a requisite factor for the court's best interest ruling. *See Leary*, 97 Md.App. at 48, 627 A.2d 30. Our concern is the question unanswered by *Leary*, namely, whether children are entitled to an advocate—in addition to their guardian—when the children's views are in opposition to the guardian's best interest recommendation. Additionally, if the children are entitled to an advocate, we

must also resolve the remaining issue of whether they are entitled to choose their advocate.

Although Maryland courts have not yet had the opportunity to rule on the question of whether children are entitled to an advocate, several state courts have decided the issue. The Supreme Court of Connecticut has concluded that a trial court has the discretion to appoint a guardian *ad litem* as well as a child advocate when doing so will assist the court in making its best interest determination. *See Newman v. Newman*, 235 Conn. 82, 663 A.2d 980 (1995). Both types of representatives are provided for in Connecticut's statutory scheme. *See Schult v. Schult*, 241 Conn. 767, 699 A.2d 134, 139–40 (1997). The *Schult* Court stated that one representative is ordinarily sufficient for the child; however, there may be circumstances in which a child should have both an advocate and a guardian, such as when there are allegations of child abuse and the parents "present drastically differing views of the events." *Id.* at 140. In those instances, the Court agreed that the child should have an advocate for his or her wishes. *See id.* at 142.

Similarly, in *Bawidamann v. Bawidamann*, 63 Ohio App.3d 691, 580 N.E.2d 15, 22 (1989), the Ohio Court of Appeals concluded that, when an attorney is appointed to serve as a child's guardian and representative, and a conflict arises between the child's wishes and the attorney's views, the attorney must be permitted to withdraw as guardian. The attorney would remain, however, as the child's representative, or advocate, zealously representing the client's position. *See id.* It was further noted by the Court that, when an attorney withdraws as guardian, the trial court should appoint a new guardian *ad litem* to champion the best interests of the child. *See id.* at 23.

The Family Court of the City of New York has utilized a more flexible approach, ruling that the role of the guardian *ad litem*, or law guardian, varies according to the age, intelligence, and maturity of the child. *See Scott v. Bruce*, 134 Misc.2d 240, 509 N.Y.S.2d 971, 973–75 (Fam.Ct.1986). The court explained that the guardian's "primary duty . . . is to

make the child's wishes known to the court." *Id.* at 974. Nevertheless, the court maintained that the law guardian was not obligated to "advocate for the child's wishes at the expense of his [or her] overall interests...." *Id.* at 975. Most important, the guardian must be "absolutely independent of any influence from either parent [or] from other family members," and the guardian must have the flexibility to represent the child in a manner appropriate for the child's age and maturity. *Id.* Thus, the court observed that a more mature child's guardian may utilize a less objective role and give greater deference to the child's wishes when making a best interest recommendation. *See id.* at 974; *see also Veazey,* 560 P.2d at 390 (ruling that a mature teenager's preference may weigh heavily in the guardian's recommendation, but the guardian is not required to parrot the child's wishes).

By contrast to the few states that allow for separate advocacy of a child's wishes in limited circumstances, the majority of states have adopted a hybrid approach for child representation. Under this approach, the guardian must express to the court the child's preferences; however, when the guardian's best interest recommendation differs from the child's views, the guardian must advocate for the child's best interest. *See generally, Clark v. Alexander, supra; Miller v. Miller, supra; In re Marriage of Hartley, supra; Ross v. Gadwah,* 131 N.H. 391, 554 A.2d 1284, 1285 (1988); *In the Interest of J.P.B. and C.R.B., supra; In re Marriage of Rolfe, supra; Mawhinney v. Mawhinney,* 66 Wis.2d 679, 225 N.W.2d 501 (1975).

In declining to provide children with an additional attorney to advocate their preferences, the courts have concluded that an advocate's presence at the custody hearing would rarely provide the trial judge with relevant information that would not otherwise be revealed by the guardian's report and the judge's interview with the children. *See Hartley,* 886 P.2d at 672 (explaining that numerous avenues exist for representation of the child's interest and, thus, allowing an attorney to advocate the child's views would be "duplicative and an unnecessary burden on the court"). Additionally, the presence of another attorney in the courtroom would increase substantial-

ly the complexity, length, and cost of the divorce proceeding. *See Miller,* 677 A.2d at 70 (noting that divorce litigation would be "complicated exponentially by the involvement of children as [represented] parties," as they could object to settlement offers, participate in discovery, and call witnesses on their own behalf). Likewise, siblings with differing opinions on custody and visitation could request separate representation, further increasing the cost and complexity of the proceeding. *See id.* Finally, "[t]he narrow focus of an attorney for the children, who would be obligated to carry out their preferences regardless of the wisdom of such a course, might well increase the likelihood of a custody determination that is not in the best interest of the children." *Id.*

In light of the minimal contribution a children's advocate could make to custody proceedings and the tremendous increase in time and cost that would result from allowing children to have an advocate, we hold that children are not entitled to an advocate for their preferences in their parents' custody dispute. As the *Clark* Court wisely observed, the costs of employing an advocate for the children's wishes "would in every case conscript family resources better directed to the children's needs outside the litigation process." *Clark,* 953 P.2d at 153. The trial court was correct, therefore, to conclude that Austin and Vanessa were not entitled to the appearance of an advocate at the divorce proceeding.

Furthermore, even if we were to agree that a child advocate would assist the trial court in making its best interest determination, analogous case law is unanimous that the trial judge must appoint—or at least approve—of the child advocate in order to insure that the attorney is both competent to represent the child and independent of any influence from the parents or other family members. *See generally J.A.R.,* 877 P.2d at 1334 (ruling that a child's statutory right to counsel in custody proceedings includes the right to choose counsel, upon the trial court's determination that the counsel is not "too closely aligned" with either parent); *In the Interest of A.W.,* 248 Ill.App.3d 971, 188 Ill.Dec. 159, 618 N.E.2d 729,

733 (1993) (noting that, pursuant to statute, children are entitled to representation by the attorney of their choice, subject to the trial judge's approval), *cert. denied sub nom. People v. Frances W.*, 153 Ill.2d 563, 191 Ill.Dec. 623, 624 N.E.2d 811 (1993).

In the case *sub judice*, the trial court observed that Carrico was not a neutral representative. Carrico was not initially contacted by the children, but rather, by either Alison or Alison's friend. Likewise, Alison's parents are funding the representation. Based upon the trial court's observation that Carrico is of "mommy's camp," we note that, even if Austin and Vanessa were entitled to an advocate, Carrico would not be permitted to serve as their attorney. Consequently, the trial court properly concluded that the children were not entitled to representation by an advocate for their preferences at the custody proceedings.

## III

■ Finally, Austin and Vanessa urge that the trial court erred by instructing Carrico that he may not speak with the children. Communications between attorneys and individuals represented by counsel are strictly prohibited unless the attorney representing the individuals has consented to the communication. Rule 4.2 (1999) of the Maryland Rules of Professional Conduct provides:

**Rule 4.2 Communication With Person Represented by Counsel**

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

According to the comment following Rule 4.2, "[t]his Rule also covers any person, whether or not a party [ ], who is represented by counsel concerning the matter in question."

When a child is represented by a guardian *ad litem*, other attorneys are generally prohibited from communicating with

the child absent the guardian's consent. *See Disciplinary Proceedings Against Kinast,* 192 Wis.2d 36, 530 N.W.2d 387, 390–91 (1995). In *Kinast,* the attorney for the children's mother conducted a five-minute interview with the children, while their mother was present. The attorney did not, however, obtain permission from the children's guardian. The rule prohibiting unauthorized communications "is intended to protect litigants from being intimidated, confused or otherwise imposed upon by counsel for an adverse party." *Id.* at 390. Thus, the Supreme Court of Wisconsin ruled that the attorney's behavior violated the ethical rule barring such communications in the absence of the guardian's consent. *See id.* at 391.

Austin and Vanessa are not parties to their parents' litigation; they are represented by a guardian *ad litem.* There is, in their view, at least a perceived conflict of interest between what they believe is in their best interest and the guardian's role in making a recommendation to the court. As we previously noted, the Supreme Court of Wyoming observed in *Clark v. Alexander, supra,* ". . . the guardian *ad litem* functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the best interest of the child." *Id.* at 152.

Rule 4.2, although indisputably applicable to the representation by a guardian, contemplates legal representation where interference with the attorney-client relationship by outside counsel impedes accomplishment of the client's stated legal objectives and instructions to achieve those objectives, on the one hand, and where such interference undermines the credibility of the attorney of record with his or her client and erodes trust and the confidential nature of the relationship between attorney and client, on the other hand.

In the case of a guardian *ad litem,* the overarching obligation of the guardian is to act as an investigative arm of the court and aid it in its determination of what is in the best interest of the child. In this role, the guardian is less concerned with providing counsel and advising the children and

more concerned with reporting accurately the familial history and relationships of the parties to the dispute and the resulting impact on the current and projected future well being of the children. In other words, the guardian's principal undertaking is to *obtain* information *from* and *about* the children rather than *dispense* information *to* the children. Ultimately, the guardian submits to the court a recommendation regarding what custody arrangement the guardian believes will facilitate and promote the best interests of the children. The court may require the guardian to testify in support of that recommendation and conduct its own *in camera* interview of the children in an attempt to reach the proper determination. In the typical custody case, particularly where very young children are involved, given the role of the guardian and the authority of the court to probe beyond the submissions of the parties and the guardian's report, the law contemplates that the interests of the children are adequately protected and there is, therefore, no necessity of the children to be provided with their own legal counsel.

In the case at hand, we have held herein that the minor children are not entitled to be a party to the dispute; thus, they have available to them for legal consultation only the guardian. Rule 4.2 of the Rules of Professional Conduct proscribes communication "about the subject of the [guardian's] representation" which, in this case, is the custodial arrangement which promotes the best interests of the children. To be sure, Carrico's discussions with Austin and Vanessa were about the subject of the representation in a technical sense; however, as we have observed, the guardian's primary task was to investigate and *obtain* information *from* the children to be factored into the guardian's recommendation to the court. Carrico's function, limited by our present holding, is solely to *disseminate* information *to* the children, a function we do not believe could be adequately performed by the guardian in her role as an investigative arm of the court. While the subject of the representation may be the same under Rule 4.2, we believe the children, by reason of the court's order prohibiting Carrico from speaking to the chil-

dren, effectively deprived Austin and Vanessa—who were just shy of being young adults—of access to legal counsel with respect to matters not within the purview of the guardian's realm of responsibility.

We note that, with respect to the lower court's order regarding contact with the children, the issue is much broader than the question of interfering with the guardian's ostensible representation of appellants. Rather, Carrico was ordered not to *speak* to the children. It follows that, as a result of our holding that the children do not enjoy the status of a party to the dispute, the mischief *Miller, supra,* cautioned against, i.e., objection to settlement offers, participating in discovery, calling witnesses on behalf of the children, and otherwise "complicat[ing] [the litigation] exponentially" is not applicable. More important, notwithstanding that Carrico was retained by the mother and maternal grandparents, ordering the children not to *speak* with counsel, without any limitations designed to prevent undermining the guardian's authority is, in our view, overly broad and an abuse of the court's discretion.

We hasten to make clear that we do not believe that the case at hand is typical. Notably, appellants are aggrieved, not by the failure of the guardian to convey to the court their preferences and concerns, but rather by their belief that their perceptions of what is in their best interests are not being adequately and precisely articulated. That the guardian has faithfully reported to the court the preferences and concerns of the children, to the best of her ability, is apparently not an issue. In this case, given the guardian's obligation to investigate and consider the children's preferences, we believe the more precise formulation of these preferences, couched in legal terminology, could prove to be a valuable resource to the guardian in preparing her recommendation to the court. Additionally, counsel could provide assurances to the children that the relief they seek, not available as a result of these proceedings, is not being denied them arbitrarily.

We are guided in our decision on this issue primarily by the ages, intelligence, and maturity of Austin and Vanessa and our

belief that a void in their representation results from precluding them from participating as parties to the proceedings and the nature of the role of the guardian as an investigative arm of the court. They seek the right to consult with privately retained and compensated counsel because they have no rights to obtain personal legal advice from the guardian or to instruct her as to their objectives or to direct her in her course of action in achieving those objectives. Carrico is neither likely to erode the children's trust or confidence in the guardian or undermine the guardian's credibility. In other words, because of the peculiar role of the guardian as a *de facto* officer of the court, there is virtually no potential of private counsel to interfere detrimentally with the relationship between the guardian and appellants. Although the law recognizes the necessity to act on behalf of individuals below the age of majority, the disability should not preclude children who are mature and astutely aware of and involved in the proceedings to determine their custody from consulting with private counsel.

Consequently, although we hold that Rule 4.2 of the Maryland Rules of Professional Conduct applies to communications with minors for whom guardians have been appointed, under the unique facts of this case, we are not persuaded that private counsel should be prohibited from consulting with the children because of the ages, intelligence, and maturity of appellants and the real or perceived inability of the guardian *ad litem* to be the investigative arm of the court and reporter of the children's preferences to the court, while simultaneously acting as advocate for appellants.

## CONCLUSION

In sum, we perceive that Austin and Vanessa are mature and intelligent individuals. Nevertheless, children, no matter how mature and intelligent, are simply not permitted to participate as traditional parties in their parents' divorce actions. It is unfortunate that Austin and Vanessa have become so involved in this matter. There can be no doubt that it has been difficult enough for each of these children to

bear witness to their parents' battle for custody and visitation. Rather than attempting to minimize the traumatic effects of this divorce, their parents have gone to great lengths to involve the children. We believe, however, that they, as the persons most affected by the proceedings, should be accorded the right to be informed as would be the right of any adult so affected.

Although Austin and Vanessa contend that they do not feel the court is hearing their concerns,[8] we have found overwhelming evidence in the record showing that the children's views are well known by the trial court. The children have written many letters to the trial judge explaining why they prefer to live with their mother and control any visitation with their father. In addition, Keller has endeavored to state the children's preference with the utmost clarity.

At the motion hearing, the trial judge explained that children are ordinarily interviewed in chambers by the presiding judge. He added that there was no reason to suspect that these children would be denied this opportunity to explain their preferences to him. Austin and Vanessa must understand that, by expressing their views to the court directly, rather than as parties to the dispute, they will fulfill their role in the proceeding. We have no doubt that, in light of their age, intelligence, and maturity, the judge will give thoughtful consideration to the children's wishes. It is the judge, however, not the children, their parents, or Keller, who has the Solomonic task of determining what is in their best interest.

**ORDER OF THE CIRCUIT COURT FOR CHARLES COUNTY DENYING APPELLANTS' RIGHTS TO SPEAK TO ATTORNEY VACATED; JUDGMENT OTHERWISE AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

---

**8.** The children have not stated why they suspect the court has not heard them. We infer that Austin and Vanessa may feel this way because the court's *pendente lite* order did not give them the unstructured visitation they requested. It is important for these children to remember that it is the court's duty to do what is in their best interest, even if it is not what they want.