*In the Matter of the Custody of T.M.*
(T.M., Appellant-Intervenor-below)
*Gary DAVIS*
Petitioner
*vs.*
*Gloria MEANS*
Respondent

In the Supreme Court of the Navajo Nation

No. SC-CV-58-98

March 5, 2001

Claudeen Bates Arthur, Esq., St. Michaels, Navajo Nation (Arizona), for Appellant/Intervenor.

Before AUSTIN, Acting Chief Justice, and FERGUSON and BENALLY, Associate Justices.

Opinion delivered by Austin, Acting Chief Justice.

On May 29, 1996, the Window Rock Family Court entered an order of contempt against T.M.'s ("the Appellant") natural mother, placed legal custody of the Appellant in the Navajo Nation Division of Social Services, and awarded primary physical custody of the Appellant to the father.[1] The court took these

---

[1] We say "father," because Gary Davis has been judicially declared to be the Appellant's father in the absence of scientific evidence to the contrary.

actions because of the mother's failure to comply with prior court orders. Gloria Means, the mother, took an appeal from the judgment, and the appeal was later dismissed. *Means v. Davis*, No. SC-CV-22-96 (Order of November 26, 1997) (appeal dismissed for lack of probable cause). On June 13, 1996, the Appellant retained Claudeen Bates Arthur as his attorney, and on July 2, 1996, the attorney filed an entry of appearance. She then filed a "Motion for Reconsideration, Severance and Separate hearing and Stay," asking the court to reconsider its May 29, 1996 custody order. On July 15, 1996, the Appellant filed a motion to intervene in his own name in the case between his parents. This motion was not simply a motion to intervene, because it asked the family court to not only permit intervention, but to conduct a "full and complete custody hearing," temporarily return the Appellant to the mother's custody, terminate the Appellant's forced visitation with the father, and order counseling and therapy for the father and mother. On February 11, 1998, the Appellant's attorney filed a motion for partial summary judgment on the issue of physical custody. On July 16, 1998, the family court entered an order denying the attorney's entry of appearance and the Appellant's motion to intervene. The Appellant took an appeal from that order.

The Appellant poses four questions to this Court, but the appropriate questions which must be addressed to resolve this appeal are these: 1) Is the Appellant entitled to intervene as a party and be represented by counsel in an action regarding his custody; 2) Is the Appellant entitled to have a spokesperson or someone to speak for him, and if so, how should that be done; and 3) Should the family court reconsider its custody determination when the Appellant had no such spokesperson.

## I

There is an ancient legal fiction that children are unable to speak for themselves in court because they are minors and they do not have the capacity to make legal decisions. That doctrine has been challenged in child custody cases where the child seeks to intervene through counsel. The issue of whether a child should have the right to directly intervene as a party in that child's custody case is fairly new and of first impression before this Court. The Appellant recognized those facts by citing The Convention on the Rights of the Child, United Nations General Assembly Resolution No. 44/25 (November 20, 1989). The pertinent provisions are in Article 12 of the Convention:

1. States Parties shall assure to the child who is capable of forming his or her own views the right to express those views freely in all matters affecting the child, the views of the child being given due weight in accordance with the age and maturity of the child.

2. For this purpose, the child shall in particular be provided the opportunity to be heard in any judicial and administrative proceedings affecting the child, either directly, or through a representative or an appropriate body, in a manner consistent with the procedural rules of national law.

The Navajo Nation is not a state party to the Convention, and it is not bound by it. The United States Senate refused to ratify the Convention, making the United States one of the few nations of the world to affirmatively reject the concept of international human rights for children. However, we acknowledge that Article 12 states customary international human rights norms which (as will be discussed below) are consistent with Navajo common law.[2] We agree that a child should be heard, which leads us to examine the "manner" in which the child should be heard "consistent with procedural rules of national law." *Id.*

Jurisdictions outside the Navajo Nation have recognized a child's right to a representative voice in custody proceedings litigated by their parents, but the majority have denied attempted intervention by minor children. The case of *J.A.R. v. Superior Court in and for County of Maricopa*, 179 Ariz. 267, 877 P.2d 1323 (Ariz. App. Div. 1, 1994), which the Appellant cites, illustrates this. There the court denied the child's motion to intervene, but recognized the child's right to have an independent attorney when there is a strong possibility that the parents' and child's interests may conflict. 877 P.2d at 1331, 1332

In the case of *Auclair v. Auclair*, 730 A.2d 1260 (Md. Ct Spec. App. 1999), the minor children made a motion to intervene in divorce and custody proceedings when, as here, the court denied their attorney's entry of appearance. The children claimed that their mother was "not representing their interests because she has violated court orders on several occasions," and that their guardian ad litem was not effectively communicating their interests to the court. *Id.* at 1265. The court said that the intervention decision turns on the question of whether the children's interests were being adequately represented by the existing parties. The court explained that children may intervene as a "matter of right" if their interests are not identical with the interests of the existing parties. *Id.* at 1266. On the other hand, if the children's interests and the existing parties' interests coincide, the children must make a "compelling showing" of inadequate representation by the existing parties to gain intervention. *Id.* The Maryland court ultimately denied the children's motion to intervene because their guardian ad litem was already adequately representing their interests. *Id.* at 1273.

In the case of *Miller v. Miller*, 677 A.2d 64 (Me. 1996), the court denied the minor children's motion to intervene in their parents' divorce action because the children had a guardian ad litem, who was "an advocate for the best interest of the children in all of its complex dimensions." *Id.* at 70. The court was concerned that permitting an additional attorney for the children to carry out their preferences, "regardless of the wisdom of [that] course," might increase

2 In *In the Matter of A.W.*, 6 Nav. R. 38, 43 (1999),we said that Navajo children "are not allowed to take part in any serious discussions; not because they have nothing to contribute, but because they have not developed the maturity needed to discuss serious matters." As we will point out below, in a custody matter that directly impacts a child, a child has a right to be heard and the child's views should be given due weight in light of his or her age and maturity.

the "likelihood of a custody determination" that is not in their best interests. *Id.* The court concluded that the use of a guardian ad litem to protect the children's interests would satisfy any federal constitutional requirement. *Id.*

The Fifth Circuit in *Drummond v. Fulton County Dept. of Family and Children's Services*, 547 F.2d 835 (5th Cir. 1977), permitted a biracial child to intervene in his adoption proceedings by white foster parents because the child had a due process right to "future life, security and stability." *Id.* at 856. The court's grant of intervention was justified by the gravity of the proceedings, but its reasoning was consistent with other courts that denied intervention primarily because the children's interests were already adequately represented by the existing parties.

In *Loll v. Loll*, 561 N.W.2d 625 (N.D. 1997), the court said that it was "reluctant to hold that a child should never be granted intervention in a custody action," but it drew a distinction between "allowing a person to be represented by counsel and allowing a party to intervene. Allowing a person to be represented by counsel merely ensures that a party has legal protection throughout the proceedings," while intervention would make the child a party who could control proceedings. *Id.* at 630.

In sum, the majority of American courts usually deny the child the right to intervene as a party in a custody action, and they justify the denial by stressing the underlying potential of the child to control the course of proceedings. The power to control a case goes far beyond simply permitting a child an opportunity to be heard, considering the child's maturity. We likewise are concerned that permitting a child to intervene as a party might exacerbate litigation. We recognize that most children cannot afford to hire their own attorney, so that would prompt a parent to pay for the attorney, and thus gain an ally in the battle for custody of the child. That scenario would indeed aggravate litigation. While a child may have the right to have his or her own attorney for consultation, that is not equivalent to the attorney appearing in the case or advocating on the child's behalf before the court. The former simply means that a child may seek the advice of an attorney as to his or her rights.

We conclude that, in our courts, under proper circumstances a child may intervene in an action between his or her parents where that child's rights or interests are affected. Whether intervention is proper is within the sound discretion of the trial court and that determination should be made after examining the child's best interests and whether the child's interests are adequately represented by the existing parties. In the case before us, we affirm the family court's denial of intervention because there is not a sufficient showing that the Appellant's representation by counsel would promote a proper resolution of the case in his best interests. That leads us to the discussion of the "spokesperson" concept.

As stated, the provisions of Article 12 of the Convention on the Rights of the Child mirror Navajo common law. The Appellant correctly states that everyone

has a right to be heard at a meaningful time and in a meaningful way. *In the Matter of the Estate of Plummer*, 6 Nav. R. 271, 275 (Nav. Sup. Ct. 1990). The Appellant also correctly notes that Navajos have a right to speak for themselves. *Navajo Nation ex rel. Division of Social Welfare, In the Matter of the Interest of J.J.S.*, 4 Nav. R. 192, 194 (W. R. Dist. Ct. 1983) (quoting G. WITHERSPOON, NAVAJO KINSHIP AND MARRIAGE, at 94-95 (1975)). The applicable maxim is, "it's up to him," meaning that the individual must be consulted before action affecting his interest can be taken.

There is no question that Navajo common law grants a child, and in this case, the Appellant, a right to be heard, considering his maturity, in a case involving that child's custody. That leads us to recommend options that the family court should consider to decide how the Appellant should exercise that right. First, the family court could conduct an informal interview of the Appellant in the presence of the parties' counsel. We note that the Appellant alleges that he is of sufficient age and maturity to speak for himself. We also note that at a hearing held on June 30, 1998, the Appellant's attorney told the court, "[T.M.] is not here, it was my determination that it is not in the best [interests] of children to sit in a proceeding such as this. I understand that the Court is willing to hear from him." Trans. at 6. However, the problem is the Appellant seems to want more than to simply express his wishes to the court. For this option to prove useful, the family court will have to carefully monitor the interview.

The second option is the family court could appoint a guardian ad litem, although the record shows that the Appellant previously had two guardians ad litem who apparently did nothing and withdrew. The guardians' failures to adequately represent the Appellant's interests suggest that a thorough review of our system for appointing guardians ad litem for children should be undertaken. Our courts use a pro bono rotation system to appoint guardians ad litem and that system may lead to the appointment of bar members who have little knowledge. Just like many jurisdictions, the role and duties of our guardians ad litem are undefined. We want a guardian who will do a thorough review of the case, including witness interviews and a complete examination of all documentation on the child, and then give an independent, accurate and reliable report to the court as a commentator, but not an advocate. We are leery of situations where a court gives too much weight to a guardian's report, without the court making its own independent judgment of the child's best interests.

The problem here is the Appellant's attorney has already taken an advocacy position, and ethically, she may not be able to serve as a guardian ad litem because she possesses confidential information from the child. For that reason, we cannot consent to that kind of participation in the case by the Appellant's attorney.

Another option is to appoint a spokesperson for the Appellant. This is more in line with Navajo common law where an adult usually makes the child's wishes known. Considering the unusual set of circumstances (drawn out litigation,

refusals to obey court orders, delaying tactics, etc.) this case entails, this option could include appointing an independent attorney or advocate to serve as the Appellant's spokesperson. The attorney or advocate could appear as the Appellant's spokesperson at the hearing or to comment upon filings or pleadings by the parties of record. The attorney or advocate, however, cannot initiate proceedings, make motions to guide the case, or otherwise pursue an advocacy role. Having an attorney or advocate as his spokesperson would not make the Appellant a party to the custody case involving his parents. The Appellant's counsel in this case should not be appointed as the Appellant's spokesperson for the reason given previously.

We leave these options to the sound discretion of the family court. We emphasize that Navajo common law grants the Appellant a right to be heard in this case, considering his age and maturity, because it affects his interests. How the Appellant exercises that right is up to the family court.

## III

We recognize that there should be a guardian ad litem for every child who is involved in a child custody, child welfare, or child protective services case. Guardians ad litem are now required under federal law for states receiving federal child welfare benefits,[3] but the Navajo Nation does not have such a system. Our family courts should appoint a guardian ad litem in every contested case involving children, and we suggest that the Navajo Nation or the Judicial Branch look into ways of establishing a comprehensive guardian ad litem or other similar program in the Navajo Nation.

We acknowledge that guardians ad litem are controversial. There are people who believe that guardians ad litem have too much power or are arbitrary in their recommendations to the court. There is also the question of whether a guardian ad litem should be an attorney or a lay person with adequate training. We do not decide these issues here, but simply highlight the Navajo Nation's need for a system that can be used to appoint an independent, competent, and well trained person to do an independent investigation of what is in a child's best interests and to do a thorough report with recommendations to the court.

In this particular case, we hold that the family court erred in failing to honor the child's suggestion that the custody order should not have been made without considering his best interests separate from the contempt issue, and it should not have been made without appointing a guardian ad litem. The decision of the family court denying intervention is affirmed, and the cause is remanded to that court for further proceedings consistent with this opinion.

We add that the family court has been attempting to do its best in light of the parties' intransigent positions. Had the adults involved with this child honored this Court's guidance about properly establishing the child's paternity using

3 The Child Abuse Prevention and Treatment Act, P.L. 93-247. 88 Stats. 4 (1974) (codified at 42 U.S.C. §§ 5101-5107).

scientific evidence, this case may have been finished years ago. *Davis v. Davis*, 5 Nav. R. 169, 172 (1987); *Davis v. Means*, 7 Nav. R. 100 (Nav. Sup. Ct. 1994).

Affirmed and Remanded.