*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| OSCAR M., a Minor,      ) | Supreme Court No. S-18835 |
|        Appellant,   ) | |
|    ) | Superior Court No. 3AN-22-04264 CI |
| v.    ) | |
|    ) | O P I N I O N |
| MARILYN P. and SHAWN M.    ) | |
|    ) | No. 7711 – August 30, 2024 |
|        Appellees.   ) | |
|    ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: David A. Case, 49th State Law, LLC, Soldotna, for Appellant. Notice of nonparticipation filed by Mark T. Chicklo, Chicklo Law Group, Anchorage, for Appellee Shawn M. No appearance by Appellee Marilyn P. Notice of nonparticipation filed by Olena Kalytiak Davis, Anchorage, for Guardian Ad Litem.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I. INTRODUCTION

A 13-year-old challenges the denial of his motion to intervene in his parents' custody case. After the superior court granted primary interim custody to the child's father, allowing visitation with the mother on weekends, the child moved to

intervene through an attorney. The court denied the child's motion to intervene, and the child appeals. We affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Marilyn P. gave birth to Oscar M. in 2010 in Texas.[1] In April 2011 a Texas court issued an order establishing Shawn M. as Oscar's biological father. The court issued a custody order granting Marilyn primary physical custody, and Shawn visitation on the weekends and some holidays. Oscar, Marilyn, and Shawn all moved to Kodiak in 2020.

### B. Proceedings

#### 1. Initial custody disputes

In January 2022 a Kodiak court issued a domestic violence protective order against Marilyn. The court found by a preponderance of the evidence that Marilyn had committed, or attempted to commit, assault or reckless endangerment against Shawn. It issued a temporary custody order granting Shawn custody of Oscar. The court granted Marilyn visitation during the weekends and when Shawn was at work.

Later in January, Marilyn filed a complaint for custody in Anchorage, seeking shared legal custody and primary physical custody. Both parties filed cross-motions for interim custody and made "allegations of domestic violence, parental alienation and related claims."[2] Marilyn also filed three domestic violence petitions on behalf of herself and Oscar against Shawn.[3]

---

[1] We use pseudonyms for all individuals in this case.

[2] Marilyn was charged with domestic violence-related offenses but these charges were dropped in April 2022. The January 2022 protective order against Marilyn, in Shawn's favor, expired in January 2023.

[3] The record on appeal does not contain additional information regarding these domestic violence petitions.

In June the venue for the open domestic violence cases was transferred from Kodiak to Anchorage. The court ordered the Court System's Parenting Plan Resolution Office to conduct a child interview with Oscar. But the office was unable to complete the interview because Oscar told the interviewer that Shawn was videotaping it, and the interview was terminated.

In August the court appointed a Guardian Ad Litem (GAL) from the Office of Public Advocacy (OPA) for Oscar "[b]ecause of the extraordinary conflict between the parties and the initial indications that the child may have been influenced by one or both parents against the other, and the difficulties arranging a neutral and unbiased interview with the child."

The court held consolidated hearings regarding custody and jurisdiction issues in August 2022 and January 2023. After considering the testimony that had been offered, various exhibits, the party's motions, Shawn's long-term domestic violence protective order against Marilyn, and the GAL's recommendations, the court analyzed Oscar's best interests[4] and issued an interim custody order granting primary physical custody to Shawn and weekend visitation to Marilyn. The court awarded Shawn sole legal custody of Oscar but directed that Shawn "notify Marilyn of important medical, educational or other decisions."

### 2. Motions to intervene and appoint counsel

In March Oscar retained an attorney and filed a motion, through his attorney, to intervene in his parents' custody case. Oscar argued he is entitled to intervene as of right or permissively because he is the petitioner in the domestic violence petition brought by his mother on his behalf and the custody matter will determine where Oscar lives. He contended neither the GAL nor his parents had properly represented his position.

---

[4] The court analyzed the factors under AS 25.24.150(c), 25.20.061, 25.20.070, and 25.20.090.

In April the GAL moved for the court to appoint counsel for Oscar under AS 25.24.310(a). The GAL noted that the court had found Marilyn indigent in the past and had "appointed OPA to provide the [GAL] services." The GAL urged that OPA should similarly "be appointed to represent" Oscar as counsel. The GAL expressed concern that Marilyn may have hired Oscar's retained counsel even though Marilyn "[did] not have legal custody of Oscar." The GAL maintained that she had expressed Oscar's wishes throughout the litigation even when it conflicted with her understanding of Oscar's best interests. But the GAL explained that "[b]ecause Oscar's desires are contrary to the GAL's best interests recommendations, the court should appoint an impartial attorney to represent Oscar's expressed interests."

In response Marilyn objected to OPA being appointed counsel for Oscar and supported Oscar selecting his own attorney.

Shawn opposed Oscar's motion to intervene and requested that Oscar's attorney be disqualified and ordered to withdraw. Shawn argued that the precedent cited in Oscar's motion to intervene was irrelevant to this case because it dealt with child in need of aid and delinquency cases as opposed to child custody. He argued that under AS 25.23.310, the court has discretion to appoint counsel for a child, but that Oscar did not follow the proper procedure. Shawn maintained that precedent allowing "a minor to choose counsel also appears conditioned on the maturity of the child at issue" and contended that Oscar lacks the maturity to choose counsel. He claimed that Alaska law did not allow Oscar to hire a lawyer, enter into a contract, or sue, especially without the consent of his parents. He emphasized that he currently has legal custody of Oscar and "has not consented to Oscar entering into any contracts with an attorney." Shawn further argued that Oscar's attorney's interference in Oscar's life violated Shawn's constitutional right to raise his child. He claimed that "Oscar's interests are fully represented" by his parents and the GAL, so there was no need for an additional attorney. He suggested that the court could arrange for Oscar to be interviewed if it was concerned about hearing Oscar's preference.

The court held oral argument on Oscar's motion to intervene in June. At the end of oral argument the court requested that the parties file their positions regarding interim custody and any modifications they were requesting to the January interim custody order.

### 3. Interim custody positions

The GAL, the parents, and Oscar filed their positions on interim custody in June and July. The GAL noted that Marilyn's recent psychological evaluation did not raise any concerns about Marilyn's ability to parent Oscar. The GAL observed that the January custody arrangement had not worked well and "recommend[ed] the parents have shared physical custody and explore a week-on, week-off arrangement until the final custody trial takes place and a final custody recommendation can be made." The GAL explained that this arrangement could work to minimize conflict during custody exchanges and give Oscar more time to "transition and settle with each parent." The GAL also recommended that the court appoint a parenting coordinator because the parents had not been "able to come to an agreement on almost anything and there is no reason to expect that will ever change." The GAL recommended the court continue this 50/50 custody schedule permanently if it is successful, but voiced her concerns regarding Marilyn violating court orders relating to custody and visitation and "the emotional impact she [was] having on Oscar through her manipulation and continued attempts at preventing him from bonding with his father."

Shawn opposed the GAL's recommendation, highlighting aspects of the psychological evaluation that indicated Marilyn was unwilling to co-parent. Shawn also noted that Marilyn repeatedly violated the custody order. Shawn requested that the January custody order remain in place, with the added condition that Marilyn's visits be supervised.

Oscar also filed his position regarding interim custody through his attorney. Oscar opposed the GAL's recommendation as unworkable. He suggested he should spend weekdays with Marilyn and weekends with Shawn, similar to the original

custody agreement in Texas. He "believ[ed] his mother w[ould] comply with court orders" and that "both parents c[ould] meet his needs." Oscar "acknowledged there is more love and affection between [him] and his mother than his father," and noted that "this issue is somewhat complex because Oscar's father was out of the picture for a while."

Marilyn agreed with Oscar's positions on interim custody.

### 4. Order denying intervention

In August the court denied Oscar's motion to intervene in the custody case and the related domestic violence litigation. Regarding the custody case, the court observed that Alaska's relevant statutory framework and precedent, along with precedent from other states, supported denying Oscar's motion. The court also decided that Oscar's preferences were adequately expressed without making Oscar a party, and noted that "granting Oscar's [m]otion to intervene would further complicate this already litigious proceeding." The court also denied intervention in litigation of the domestic violence petitions. Oscar filed a motion for reconsideration, which the court ultimately denied.

In a separate order the court denied the GAL's motion to appoint OPA as counsel for Oscar. The court ordered the Parenting Plan Resolution Office to conduct a preference interview with Oscar "in an abundance of caution." But in September the Parenting Plan Resolution Office filed a notice that it was unable to complete the interview with Oscar, stating, "[O]ften cases with continuous motions and opposing allegations need a private custody investigator."

Oscar appeals the denial of his motion to intervene in the custody case.[5]

---

[5] No other parties participate in this appeal. Additionally Oscar appeals only the superior court's denial of his motion to intervene in his parents' custody litigation. He does not appeal the denial of his requests to intervene with respect to the domestic violence petitions.

## III. STANDARD OF REVIEW

"Questions of statutory interpretation . . . are reviewed de novo, and we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

Alaska Civil Rule 24 governs intervention as of right and permissive intervention. "In reviewing a trial court's denial of a motion to intervene as a matter of right, we apply our independent judgment if timeliness is not at issue and if the facts relevant to intervention are not disputed because then only questions of law are posed."[7] We review a denial of permissive intervention for abuse of discretion.[8] "A decision constitutes [an] abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[9]

## IV. DISCUSSION

The court did not err in denying Oscar's motion to intervene in his parents' custody dispute. Because it is not clear that analysis of a child's right or ability to participate in custody litigation is best analyzed under Rule 24, we look first to Alaska's statutory scheme governing custody litigation. We observe that this statutory scheme provides mechanisms for considering a child's preferences in a custody dispute, and we conclude that here the court was provided information about Oscar's best interests and preferences such that the court need not have allowed Oscar to intervene as a party. We

---

[6] *Tuluksak Native Cmty. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 530 P.3d 359, 368 (Alaska 2023).

[7] *See Hopper v. Est. of Goard*, 386 P.3d 1245, 1248 (Alaska 2017) (internal quotation marks omitted) (quoting *Harvey v. Cook*, 172 P.3d 794, 798 (Alaska 2007)).

[8] *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Zander B.*, 474 P.3d 1153, 1162 (Alaska 2020), *overruled on other grounds by Blythe P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 524 P.3d 238, 241 (Alaska 2023).

[9] *Id.* (alterations in original) (quoting *del Rosario v. Clare*, 378 P.3d 380, 383 (Alaska 2016)).

next analyze Oscar's arguments under a Rule 24 framework. We conclude that the court did not err or abuse its discretion in denying Oscar's requests under Alaska's intervention rules, because Oscar's preferences and best interests were adequately represented through his parents and the GAL, and because allowing intervention would likely prejudice the parties.

A. **Alaska's Relevant Statutory Framework Supports The Court's Denial Of Oscar's Motion To Intervene.**

Alaska's statutory framework for deciding child custody disputes provides multiple mechanisms for consideration of a child's custody-related preferences where appropriate. That framework provides that a child may be appointed counsel, a GAL, or both, so that the child's position or best interests may be represented, and there are other mechanisms that allow for a court to learn about and consider a child's position without the child intervening as a party. Here, where the court was able to gather information about Oscar's preferences in multiple ways, the court did not err or abuse its discretion in denying Oscar's request to intervene in the litigation.

1. **Appointment statute**

Alaska Statute 25.24.310 governs representation of a minor in divorce and custody proceedings. Under the statute, "the court may, upon the motion of a party to the action or upon its own motion, appoint an attorney or the office of public advocacy to represent a minor with respect to the custody, support, and visitation of the minor or in any other legal proceeding involving the minor's welfare."[10] When a party or the court raises this issue, "the court shall determine whether the minor or other child should have legal representation or other services and shall make a finding on the record before trial. If the parties are indigent or temporarily without funds, the court shall appoint the office of public advocacy."[11] The statute also provides that the court may appoint a

---

[10] AS 25.24.310(a).

[11] *Id.*

GAL "[i]nstead of, or in addition to, appointment of an attorney."[12] The court must appoint a GAL "when, in the opinion of the court, representation of the child's best interests, to be distinguished from preferences, would serve the welfare of the child."[13]

Oscar suggests that AS 25.24.310's provision for appointing counsel for a child in custody litigation anticipates that children should be permitted to intervene as parties in the litigation. He contends that where the statute allows the court to appoint a lawyer for a child, the legislature likely contemplated that the lawyer would have a role in the litigation, essentially providing for intervention at least as to some issues. Oscar further observes that the statute's allowance for appointment of counsel "does not exclude retained counsel," so that a child should be permitted to intervene in custody litigation via his own privately retained attorney.

We agree that AS 25.24.310's provision for appointment of an attorney for a child anticipates that, where appropriate, the attorney, and thus the child, will have a role in the litigation at issue, but we disagree with Oscar's suggestion that this should routinely be the case in custody litigation.[14] And we disagree with Oscar's argument that the superior court in this case was unable to learn of or consider Oscar's preferences without allowing him to intervene in this case.

Alaska Statute 25.24.310's provision for appointment of counsel for a child does provide a vehicle for a child, through counsel, to participate in at least some aspects of custody litigation under certain circumstances. And it may be that in rare circumstances it would be appropriate for a child, through counsel, to participate as a

---

[12] AS 25.24.310(c).

[13] *Id.*

[14] *See Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014) ("[W]e interpret the statute according to reason, practicality, and common sense." (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003))). Even if Oscar followed the proper procedures for the appointment of an attorney under AS 25.24.310(a) this would not change our analysis of the denial of Oscar's motion to intervene.

party in child custody litigation.[15]  But the statute does not mandate that a child must be permitted to intervene as a party in custody litigation.  Nor does the statute elevate the child's preferences beyond the other enumerated factors to be considered in determining best interests such that a child should typically be permitted to intervene as a party in his parents' custody litigation.  Indeed routine intervention by children as parties in custody litigation would seem to be contrary to their best interests as explained below.

While the appointment statute provides the court an ability to hear from a child, through counsel, regarding one or more issues, the statute is a flexible one that calls upon the court to exercise its discretion in discerning when appointment of counsel, appointment of a GAL, or use of another mechanism for hearing from a child would inform the court about the child's best interests and serve the welfare of the child.[16]  Here the court exercised its discretion and determined that appointment of a GAL would serve Oscar's welfare.  And the GAL both advocated for Oscar's best interests and separately informed the court, multiple times, of Oscar's position.  Nothing in the record suggests that the court abused the discretion afforded to it under the appointment statute when it denied Oscar's request to intervene.[17]

---

[15]     *See Ihinger v. Ihinger*, 824 A.2d 601, 604 (Vt. 2003) ("[A]lthough children are not statutory parties to a divorce action involving their parents, they may still become parties if they meet the usual standards governing intervention."); *Loll v. Loll*, 561 N.W.2d 625, 630-31 (N.D. 1997) ("[U]nder very rare, extraordinary circumstances, a child may need to become a party in a custodial case.").

[16]     *See* AS 25.24.310(a), (c).

[17]     *See id.*  We do not address Oscar's arguments regarding his right to retain private counsel because they are not relevant in determining if Oscar has a right to intervene in this case.  Oscar also acknowledges "there is no longer a live dispute" over whether he may retain a private attorney.

## 2. Child's preferences in custody cases

Beyond the appointment statute's provision for the court's discretion in determining when to appoint counsel or a GAL for a child in a custody case, we observe that Alaska's custody-related statutory framework provides instruction about how and when a court should consider a child's preferences. Moreover, when a court seeks information about a child's preferences, there are multiple ways in which the court may obtain such information. The court's ability to receive information about the child's preferences does not require that the child participate as a party in the custody case.

Under AS 25.24.150(c) the court must consider the child's best interests in determining custody. Among many best interest factors the court must consider is "the child's preference if the child is of sufficient age and capacity to form a preference."[18] "The superior court has discretion to determine whether a child is capable of forming a trustworthy preference."[19] We have held that "in cases where a child does not show maturity or there is evidence that the choices were motivated by bad reasons, the court may choose to disregard the child's preference, or to give it little weight."[20] On the other hand, we have recognized that "[a] well-reasoned preference by a mature teenager can, in some cases, be a deciding factor."[21] However, "involving

---

[18] AS 25.24.150(c)(3).

[19] *Thomas v. Thomas*, 171 P.3d 98, 103 (Alaska 2007) (citing *Fardig v. Fardig*, 56 P.3d 9, 13 n.13 (Alaska 2002)).

[20] *Schaeffer-Mathis v. Mathis*, 407 P.3d 485, 493 (Alaska 2017) (quoting *Michele M. v. Richard R.*, 177 P.3d 830, 833, 838 (Alaska 2008)) (deciding superior court did not abuse its discretion in failing to explicitly discuss preferences of ten-year-old- and eleven-year-old children).

[21] *Id.* (citing *Michele M.*, 177 P.3d at 833, 838).

young children in the process of deciding child custody matters is generally not appropriate."[22]

Both Alaska's statutory scheme for deciding child custody, and our precedent interpreting that statutory framework, recognize the role that a child's preferences may occupy in custody litigation, without the need for the child to intervene.[23] Where the child is a teenager like Oscar, the court is more likely required to consider the child's preferences.[24] But the court still has discretion in how much weight to give the child's preferences amidst the other best interest factors. A court need not prioritize a 13-year-old child's, or even an older child's, preferences if the child is immature or unduly influenced by others.[25] Alaska law thus provides for the court's consideration of a child's preferences in determining custody without requiring that the child participate as a party. Indeed, a child's participation as a party in custody litigation in order to advocate for his preferences would seem to elevate the child's

---

[22] *McLane v. Paul*, 189 P.3d 1039, 1044-45 (Alaska 2008) (deciding preferences of six-year-old child in custody proceeding deserve less weight (quoting Joan B. Kelly, *Psychological and Legal Interventions for Parents and Children in Custody and Access Disputes: Current Research and Practice*, 10 VA. J. SOC. POL'Y & L. 129, 151 (2002))).

[23] *See* AS 25.24.150(c)(3).

[24] *See Valentino v. Cote*, 3 P.3d 337, 340–41 (Alaska 2000) (considering preferences of mature and articulate 14-year-old); *Sheffield v. Sheffield*, 265 P.3d 332, 335-36 (Alaska 2011) (considering preferences of 14-year-old where there was no evidence of immaturity or undue influence by father); *Yvonne S. v. Wesley H.*, 245 P.3d 430, 435 (Alaska 2011) (considering preferences of 14-year-old who "was mature, made good decisions, and had legitimate reasons for her custody preference").

[25] *See Jenkins v. Handel*, 10 P.3d 586, 590-91 (Alaska 2000) (declining to prioritize 13- and 15-year-old children's preferences in custody dispute because they were unduly influenced by other adults and older sibling); *Michele M.*, 177 P.3d at 833, 838 (declining to prioritize 14-year-old child's preference in custody dispute because he was too manipulative and his preference was motivated by bad reasons).

preferences at the expense of other best interest factors and to the detriment of the child's overall best interests.

To be clear, it is important that a court be able to understand a mature child's preferences and best interests, but there are multiple ways in which trial courts can obtain information both about a child's preferences and best interests without making the child a party that hears and participates in all aspects of his parents' custody case. The court can obtain information about the child's best interests from the parents and from a myriad of other sources, such as witnesses, exhibits, and, where present, the GAL. Here both of Oscar's parents advocated for his interests, and Marilyn adopted Oscar's position as her position on interim custody. Oscar's GAL also provided multiple reports and recommendations related to Oscar's best interests.

Separately, there are a variety of tools available to the superior court to assist in discerning and understanding a child's preferences. The court can interview the child in various ways, including by conducting a direct interview with the child, by ordering an interview by a court professional for the child's preference, or by appointing an independent expert to investigate custody issues.[26] Those are just some of the ways in which a court can learn about a child's preferences. Here, although the Parenting Plan Resolution Office was twice unable to complete a child preference interview, Oscar's preferences were presented to the court multiple times by the GAL, and were reiterated in Oscar's filings. The court was therefore able to consider Oscar's preferences in making its best interest determination and did not err in denying his motion to intervene.[27]

---

[26] *See* Alaska R. Civ. P. 90.6.

[27] *See* AS 25.24.150(c)(3); c*f. J.A.R. v. Superior Ct. in & for Cnty. of Maricopa*, 877 P.2d 1323, 1330-31 (Ariz. App. 1994) (denying child's motion to intervene and concluding child's interests are adequately represented through court

**B.** **The Court Did Not Err Or Abuse Its Discretion In Denying Intervention As Of Right And Permissive Intervention.**

Alaska's rules regarding intervention do not clearly address a child's participation in a custody dispute,[28] but given that Oscar framed his request as a motion to intervene, we address the rules' application here.

### 1. Intervention as of right

Under Alaska Civil Rule 24(a) a court uses a four-part test to determine whether an applicant may intervene as of right:

> (1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) it must be shown that this interest may be impaired as a consequence of the action; and (4) it must be shown that the interest is not adequately represented by an existing party.[29]

Oscar states he has a "right to consortium with his parents" that he seeks to vindicate in this suit. Oscar claims he "is entitled to intervene as of right" because his interests are not adequately represented by the parties. He argues that the GAL does not adequately represent him because "the GAL's interests are adverse to [Oscar's] preferences and his perception of his best interests." He also contends that his mother,

---

rules and statutes requiring court to consider child's preferences, allowing court to interview child, and permitting court to appoint attorney for child).

[28] We apply Alaska Civil Rule 24 in deciding whether non-parties may intervene in custody disputes; however, our precedent only addresses a person serving a parenting role seeking to intervene. *See Dara v. Gish*, 404 P.3d 154, 161 (Alaska 2017) (allowing grandparent to intervene); *Elton H. v. Naomi R.*, 119 P.3d 969, 979 (Alaska 2005) (allowing grandparent to intervene); *Kinnard v. Kinnard*, 43 P.3d 150, 153-54 (Alaska 2002) (allowing stepparent to intervene); *Buness v. Gillen*, 781 P.2d 985, 988 (Alaska 1989) (allowing stepparent to intervene), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 n.34 (Alaska 2004). Our precedent does not directly address a child intervening in his parents' custody litigation.

[29] *Hopper v. Est. of Goard*, 386 P.3d 1245, 1247 (Alaska 2017) (quoting *State v. Weidner*, 684 P.2d 103, 113 (Alaska 1984)) (citing Alaska R. Civ. P. 24(a)).

father, and the GAL have no incentive or obligation to zealously advocate for his preferences.

Oscar does not meet the requirements to intervene as of right under Civil Rule 24(a). Even assuming without deciding that Oscar has met the first three requirements, by filing a timely motion and identifying an interest in the litigation that may be impaired, [30] he does not meet the fourth requirement to intervene as of right, because his interest is adequately represented by existing parties.[31] Both of Oscar's parents are participating vigorously in this litigation, and his GAL has expressed and advocated for his best interests. Oscar maintains his parents do not represent his interests because both want sole custody. However, Marilyn's stated position aligns with Oscar's interim custody position. And to the extent Oscar's stated interest in the litigation requires understanding of his preferences, the GAL has explained Oscar's preferences to the court and identified where Oscar's preferences diverge from the GAL's recommendations on best interests. We further note that courts in other states have similarly denied a child's motion to intervene as of right because the child's interests were adequately represented by the parents or a GAL.[32] We conclude the superior court did not err in denying Oscar's motion to intervene under Rule 24(a).

---

[30] *See id.*

[31] *See id.*

[32] *See In re Stapleford*, 931 A.2d 1199, 1201-02 (N.H. 2007) (concluding GAL sufficiently represented child's interests); *Frank v. Frank*, 833 A.2d 194, 196-97 (Pa. Super. 2003) (determining children's interests were adequately represented by their testimony, their parents, and their legal guardians); *Auclair v. Auclair*, 730 A.2d 1260, 1269-70 (Md. Spec. App. 1999), *abrogated on other grounds by Fox v. Wills*, 890 A.2d 726 (Md. 2006) (deciding GAL adequately represented children's best interests "even though the children may not agree with [the GAL's] best-interest recommendation"); *Loll v. Loll*, 561 N.W.2d 625, 630-31 (N.D. 1997) (deciding parents adequately represented child's interests); *Miller v. Miller*, 677 A.2d 64, 70 (Me. 1996) ("The

## 2. Permissive intervention

Under Civil Rule 24(b) a court may permit a party to intervene if the applicant timely moves to intervene and the "applicant's claim or defense and the main action have a question of law or fact in common." The court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[33]

The court denied Oscar's motion to intervene in part because it determined that allowing intervention would complicate the proceeding. The court explained that granting the motion "would add an additional advocate who would seek to question and perhaps present witnesses. The attorney might seek additional discovery, make objections and file motions, and an additional schedule would need to be considered" in convening hearings. The court also questioned what implications would arise from making Oscar a party, such as whether he would have the right to appeal or later seek to modify the order. The court concluded that "all of these issues could further complicate this proceeding, and lead to further delay which is not in Oscar's best interest."

Oscar argues that even if he is not entitled to intervene as of right, the court abused its discretion in denying permissive intervention. He contends that the court incorrectly speculated about the complications and delay that may result from his intervention when the law only permits consideration of whether the intervention would unduly delay or prejudice the parties. He claims this case has already been delayed multiple times and the trial court can place time limits to avoid undue delay. Oscar further argues that the court should not be concerned with the implications of his

---

guardian ad litem is already an advocate for the best interest of the children in all of its complex dimensions."); *In re Marriage of Hartley*, 886 P.2d 665, 674-75 (Colo. 1994) (deciding GAL adequately represents best interests of child).

[33] Alaska R. Civ. P. 24(b).

intervention, and that he would only be able to seek modification in the future upon showing of a "substantial change in circumstances," as with any other party seeking to modify a custody order.

Again assuming without deciding that Oscar met the other elements necessary for permissive intervention, the court did not abuse its discretion in denying Oscar's motion, because allowing Oscar to intervene would likely lead to undue delay and prejudice to the parties. This case has stretched on for about two years, with many motions and filings, and Oscar's intervention would likely delay proceedings further.[34] We observe that the statutory scheme governing child custody requires the court to consider a child's stability and continuity in its best interests analysis, and we note that hearing and deciding cases expeditiously can help to preserve stability for the child.[35] We further note that courts in other states have expressed similar concerns that allowing children to intervene would overly complicate divorce and custody proceedings.[36] Here the court's concerns regarding the delay and complication that would result from intervention were reasonable and supported by the record.

Perhaps more importantly, allowing Oscar to intervene as a party in his parents' custody case would very likely prejudice Shawn and Marilyn and harm their

---

[34]    *See Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 916 (Alaska 2000) ("[A]dditional parties are always the source of additional questions, briefs, objections, arguments and motions." (alteration added) (quoting *Weidner*, 684 P.2d at 114)).

[35]    *See* AS 25.24.150(c)(5); *Schuyler v. Briner*, 13 P.3d 738, 742 (Alaska 2000) ("Because family law strives to create stability for children, courts should not encourage unnecessary hearings in custody cases.").

[36]    *See Miller*, 677 A.2d at 70 ("Divorce litigation would be complicated exponentially by the involvement of children as parties."); *In re Hartley*, 886 P.2d at 675 ("Adding another attorney to the case would overburden the courts and the parties by increasing costs and causing delays without significantly increasing the fairness of the proceeding.").

relationships with Oscar. The statutory best interest factors include considering the "willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[37] The court expressed concerns about the strain the custody case has already had on Oscar's relationships with his parents. Particularly given findings the superior court has already made regarding the nature of this litigation and concerns about manipulation of Oscar, allowing Oscar to participate as a party would very likely add further strain to his relationships with his parents. Indeed, allowing Oscar to become a party litigating in the custody case would likely undermine his best interests on many levels.

For all of these reasons we conclude that the court did not abuse its discretion in denying permissive intervention.

## V.   CONCLUSION

We AFFIRM the superior court's order denying Oscar's motion to intervene.

---

[37]     AS 25.24.150(c)(6).